**DERR CONSTRUCTION COMPANY,**
Appellant,

v.

**CITY OF HOUSTON, Blount Brothers Corporation, Gilbane/Mayan Joint Venture, Gilbane Building Company and Mayan Contractors, Inc., Appellees.**

No. B14–91–00518–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

April 30, 1992.

Rehearing Denied July 2, 1992.

M. David Frock, Dianne Zomper, Houston, for appellant.

Rebecca A. Van Deuren, Kenneth D. Kuykendahl, Charles E. Fitch, S. Bradley Todes and Sheryl Silkes Roper, Houston, for appellees.

Before PAUL PRESSLER, MURPHY and CANNON, JJ.

## OPINION

MURPHY, Justice.

This is an appeal from summary judgments granted in favor of the appellees. Appellant brings one point of error alleging the trial court erred in granting the summary judgments in favor of the appellees. We affirm.

On April 28, 1986, an accident involving a crane occurred at the construction site of the George R. Brown Convention Center in Houston, Texas. The property upon which the convention center was being constructed was owned by the City of Houston (the City). The City contracted with Blount, Inc., successor in interest by merger to Blount Brothers Corporation (Blount) to act as the general contractor and with Gilbane/Mayan Joint Venture, Gilbane Building Company and Mayan Contractors, Inc. (Gilbane) to act as the construction administrator. Blount sub-contracted with Derr Construction Company (Derr). Derr was to perform steel erection on the project. On the day of the accident, one of Derr's employees was driving a Linkbelt 718 crane on one of the construction roadways on the site. As the crane was being driven over the roadway, the road collapsed into an underground cavity present under the road. The crane fell into the hidden cavity. The accident caused extensive damage to the crane and the boom attached to the crane. The crane was covered by an insurance policy provided by United States Fire Insurance Company (U.S. Fire). U.S. Fire paid Derr for the crane less the deductible owed by Derr under the terms of the policy.

After the accident, Derr sued the City, Blount and Gilbane for damages to the crane. Derr brought claims of negligence, ordinary and gross, and breach of contract. Derr sought money damages not covered by the insurance policy plus the deductible, and U.S. Fire asserted its subrogation rights to recover the amount paid Derr under the insurance policy. Blount and Gilbane–Mayan filed a joint motion for summary judgment and the City filed a motion for summary judgment. The motions for summary judgment alleged several grounds under which the appellees alleged they were entitled to judgment as a matter of law. On February 22, 1991, the trial court granted both motions for summary judgment and severed the counterclaims brought against Derr by the appellees. Appellant Derr appeals from the trial court's order granting summary judgments in favor of the appellees.

In its sole point of error, Derr contends the trial court erred in granting summary judgments in favor of the appellees.

A summary judgment is not entitled to the same deference given to a judgment following a trial on the merits. An appellate court does not view the evidence in the light most favorable to the judgment of the trial court when reviewing the granting of a summary judgment. At either the trial or the appellate level, the question is not simply whether the non-movant raised a material fact issue to defeat the motion for summary judgment, rather the movant must prove beyond question that it was entitled to judgment as a matter of law. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828–29 (Tex.1970); *Flowers v. United Ins. Co. of Am.*, 807 S.W.2d 783, 785 (Tex. App.—Houston [14th Dist.] 1991, no writ); TEX.R.CIV.P. 166a(c). If the movant fails to prove entitlement to judgment as a matter of law, the appellate court must remand the case for a trial on the merits. *Flowers*, 807 S.W.2d at 785. The standards for reviewing a summary judgment have been clearly mandated by the Texas Supreme Court:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubt resolved in its favor.

*Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985); *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex.1984).

■ As grounds for their summary judgment motions, the appellees asserted: (1) the subcontract between Derr and Blount released the appellees from any liability for damage to the crane; (2) U.S. Fire cannot pursue the subrogation action because Derr released the appellees from any liability and Derr agreed to waive subrogations rights against the appellees, thus destroying the insurance company's subrogation rights; and (3) neither Derr nor U.S. Fire can maintain this suit because the subcontract required Derr to name the appellees as additional insureds in its insurance policies and it failed to do so. The City asserted these contractual defenses and also asserted governmental immunity. Since all of the appellees asserted contractual defenses in support of their motions for summary judgment it was necessary for them to prove at least one of the defenses as a matter of law in order to be entitled to summary judgment. *See City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex.1979). In this case, the trial court's order granting the summary judgments did not specify the ground or grounds upon which it relied in making its determination. When a trial court's order granting summary judgment does not specify the ground or grounds relied on for the ruling, summary judgment will be affirmed on appeal if any of the theories advanced is meritorious. *Rogers v. Ricane Enter., Inc.*, 772 S.W.2d 76, 79–80 (Tex. 1989). Therefore, while indulging every reasonable inference in favor of the non-movant, Derr, we must determine if the appellees proved any of the asserted defenses as a matter of law.

The first ground for summary judgment asserted by all of the appellees is that a provision in a rider dated March 1, 1985, attached to the subcontract between Derr and Blount released all of the appellees from any liability for damage to the crane.

The provision in question states:

24. Paragraph [a] of Article IX of the printed form is hereby deleted and shall be replaced with the following:

(i) Subcontractor hereby assumes full responsibility and liability for the work to be performed hereunder and hereby releases, relinquishes and discharges and agrees to indemnify, protect and save harmless Contractor, the City, the Architect, Construction Administrator and any of their agents, servants and employees of and from all claims, demands and causes of action of every kind and character including the cost of defense thereof, for any injury to, including death of, persons (whether they be third persons, contractor, or employees of either of the parties hereto) and any loss of or damage to property (whether the same be that either of the parties hereto or of third parties) caused by or alleged to be caused, arising out of, or in connection with Subcontractor's work to be performed hereunder, or by the reason of the sale or manufacture of any material or equipment covered hereby, or the use thereof by the City after installation thereof, whether or not said claims, demands, and causes of action in whole or in part are covered by insurance hereinbefore. The Subcontractor further agrees to defend any suit or action covered by this Paragraph (a) brought against one or more of the Contractor, the City, the Architect or the Construction Administrator, their agents, servants, and employees for any alleged loss, damage, injury to, or death of, persons or property loss or patent infringement and to pay all damages, costs and expenses, including attorney's fees, arising in connection therewith or resulting therefrom. These obligation to indemnify and defend shall cover any cost of any kind including by (sic) not limited to in any way by any limitations of the amount or type of damages, compensation or benefits payable by Subcontractor under Worker's Compensation acts, disability acts or other employee benefit acts. Subcontractor expressly acknowledges that it has received from Contractor $100 and other fair, adequate and

separate consideration in return for its agreement to provide indemnification as provided herein.

(ii) As a limitation on the foregoing Subparagraph (a)(i), Subcontractor shall have no duty to indemnify or defend Contractor for claims, demands, or causes of action not involving the negligence of the Subcontractor or those for whom the Subcontractor is responsible. With respect only to such claims, demands, or causes of action covered by this subparagraph (a)(ii), Contractor, provided Contractor or its employees were negligent, will owe the obligation to indemnify and to defend to Subcontractor.

This clause was changed at Derr's request by a change order dated April 17, 1985. The former provision put Derr at a distinct disadvantage as far as the indemnity portion of the clause was concerned. Therefore, Derr insisted that it be changed.

The appellees argued in their motions for summary judgment that this provision released appellees from any liability for damages to the crane. Derr contends that this provision is a mere indemnity clause, not an exculpatory clause, and therefore does not apply to the suit between Derr and the appellees. On appeal, the appellees allege that the provision is an exculpatory clause and an indemnity clause contained within the same paragraph, and the change order insisted upon by Derr altered the indemnity provision but left the exculpatory clause unaltered.

■ An exculpatory clause or a release of liability and an indemnity provision have distinctive characteristics that distinguish one from the other. *Cox v. Robison*, 105 Tex. 426, 150 S.W. 1149, 1155 (1912); *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 821 S.W.2d 359, 362 (Tex.App.—Waco 1991, writ granted). A release extinguishes a claim or cause of action as would a prior judgment and is an absolute bar to any suit on the released matter. *Hart v. Traders & Gen. Ins. Co.*, 144 Tex. 146, 189 S.W.2d 493, 494 (1945); *Dresser*, 821 S.W.2d at 362. An indemnity provision arises from a promise by the indemnitor to safeguard or hold the indemnitee harmless against existing or future loss, liability, or both. *Dresser*, 821 S.W.2d at 362; *Russell*

*v. Lemons*, 205 S.W.2d 629, 631 (Tex.Civ. App.—Amarillo 1947, writ ref'd n.r.e.). Unlike the release, which suppresses a cause of action, an indemnity provision creates a potential cause of action between the indemnitee and the indemnitor. *Id.*

■ Another difference between a release and an indemnity provision exists. A release extinguishes any actual or potential claim the releasor might have against the releasee without regard to the releasee's liability to third parties. *Dresser*, 821 S.W.2d at 362; *see Whitson v. Goodbodys, Inc.*, 773 S.W.2d 381, 383 (Tex.App.—Dallas 1989, writ denied). In contrast, an indemnity provision does not apply to claims between the parties to the agreement. Rather it obligates the indemnitor to protect the indemnitee against claims brought by persons not a party to the provision. *Id.*

■ In this case, we will look at the provision in question with these distinctions in mind to determine whether the provision in question releases, indemnifies, or releases and indemnifies.

A breakdown of the provision reveals that it requires Derr to do three things: (1) assume full responsibility and liability for the work to be performed; (2) release, relinquish and discharge the appellees from liability; and (3) indemnify the appellees:

Subcontractor hereby assumes full responsibility and liability for the work to be performed hereunder, **and** hereby releases, relinquishes and discharges **and** agrees to indemnify protect and save harmless Contractor, the City ... Construction Administrator ... from all claims, demands and causes of action of every kind and character including the cost of defense thereof, for any injury to, including death of, person **(whether they be third persons, contractor, or employees of either of the parties hereto)** and any loss of or damage to property **(whether the same be that either of the parties hereto or of third parties)** caused by or alleged to be caused, arising out of, or in connection with Subcontractor's work to be performed hereunder ... whether or not said claims, de-

mands and causes of action in whole or in part are covered by insurance hereinbefore ... (emphasis supplied)

The provision clearly states that Derr is to be responsible for its work *and* release *and* indemnify the appellees. The very words used in the provision lend credence to the fact that this is a release coupled with an indemnity provision. Typical indemnity language is "indemnify, save, protect, save/hold harmless." Release language is generally "release, discharge, relinquish." Both types of language appear in the subcontract between Derr and Blount. Derr argues that all of the words used are general words of indemnity that can be used interchangeably. However, the use of all of these words, separated by the "and", in the same provision, shows an intent to release as well as indemnify.

The language in the parenthetical portions of the provision is very illuminating and further strengthens this interpretation when the differences between a release and an indemnity provision are considered. The parenthetical statements are to the effect that the provision applies whether the damage is to a third person or his property or to the parties themselves. As we stated earlier, a release is effective as between the releasor and the releasee without regard to third parties, while an indemnity clause is effective as between the indemnitor and the indemnitee with specific regard to third parties. We recognize that parties often include this type of language in mere indemnity provisions, *see Dresser*, 821 S.W.2d at 363, however, this language coupled with the release language in the provision is further proof that the clause in this case is more than a mere indemnity provision.

■ Derr next argues that even if the provision is both an exculpatory clause and indemnity clause, the appellees cannot escape liability because the language contained in paragraph (a)(i) is limited by that in (a)(ii). While it is true that (a)(ii) places a limitation of the language used in (a)(i), the limitation goes only to the indemnity portion of paragraph (a)(i). The limitation states that the subcontractor (Derr) shall have no duty to indemnify or defend the contractor if the subcontractor is not negli-

gent, and the contractor shall have the duty to indemnify or defend the subcontractor if the contractor is negligent. This limitation speaks specifically of the duty to indemnify; it does not mention a limitation on the subcontractor's duty to release the appellees. It does not even contain any of the release language used in the preceding paragraph. Derr's argument as to the limitation is without merit.

■ Derr argues that because Blount is the party which prepared the contract containing this provision it must be construed most strictly against it, especially since the clause purports to exempt Blount from liability. *See Temple–Eastex Inc. v. Addison Bank*, 672 S.W.2d 793, 798 (Tex. 1984); *Manzo v. Ford*, 731 S.W.2d 673, 676 (Tex.App.—Houston [14th Dist.] 1987, no writ). This court acknowledges that these statements are correct statements of law, but the circumstances behind the final draft of this specific provision have a bearing on its construction. *See Manzo*, 731 S.W.2d at 676. When the paragraph was initially drafted, the indemnity portion was less than favorable to Derr. Further, the original provision contained no limitation on indemnity as did the final draft (paragraph (a)(ii)). The indemnity portion of the provision was changed and paragraph (a)(ii) was added at Derr's insistence, yet Derr chose not to delete or change the release language. That portion of the provision remained unchanged from the original. An exculpatory clause is enforceable unless one party is at a disadvantage in bargaining power and the contract is void as against public policy. *Allright Inc. v. Elledge*, 515 S.W.2d 266, 267 (Tex.1974). Since Derr had sufficient power to require Blount to change the indemnity portion of the provision, it cannot be said that it was at such a disadvantage in bargaining power so as to render the provision and the contract void. Considering the circumstances surrounding the negotiation of the subcontract and the bargaining positions of the parties, we find that the provision clearly excludes Derr's claims against the appellees.

Derr also relies on the *Dresser* case for its claim that the clause in question is a mere indemnity provision. In *Dresser*, Page brought suit against Dresser Industries (Dresser) and Houston Fishing Tools Company (Houston). Page claimed that Dresser and Houston had negligently damaged an uncompleted oil well. *Dresser*, 821 S.W.2d at 361. The jury found that both Dresser and Houston were negligent. *Id.* On appeal, Dresser and Houston argued that certain provisions in the contract between Page, Dresser and Houston released them from any liability for damage to the oil well. *Id.* In the contract there were two separate provisions: one as to Dresser and one as to Houston. The court of appeals held that the Dresser provision was an indemnity clause, but the Houston provision was a release. *Id.* at 363–64. The Dresser provision stated, in pertinent part:

> Except where damage or injury is caused by gross or willful negligence on our part, *[Page] shall indemnify [Dresser] and hold [Dresser] free and harmless from all claims for* personal injuries, including death and damage, *including subsurface damage or injury to the well ... including claims alleging that injuries or damages were caused by [Dresser's] negligence, whether such claims are made by [Page], by [Page's] employees, or by third parties.*

(emphasis in the original) *Id.* at 363. The Houston provision stated, in pertinent part:

> *[Houston] shall not be liable to [Page] on any theory of legal liability* against which [Houston] may legally contract *for any injury or damage* to persons ... or to *property (whether subsurface or not, including reservoir loss)* and any losses arising out of such damage *where such damage is sustained in connection with, arising out of, or resulting from the service or material used in the service.*

(emphasis in the original) *Id.* at 364. The Dresser provision, unlike the provision in the case before us, does not contain any release language, e.g. release, discharge or relinquish. The Houston provision contains release language, yet contains no indemnity language, e.g. indemnify, protect, save or hold harmless. The provision in this case contains both indemnity language, like the Dresser provision, and release language, like the Houston provision. In fact, the release language in the provision between Derr and the appellees is even more specific than that approved by the court in *Dresser*. The provision at issue here surrenders legal rights or obligations between the parties, as well as providing for indemnity. *Id.* at 362. ("The Subcontractor [Derr] hereby ... releases and discharges ... contractor [Blount], the City, the Architect, Construction Administrator [Gilbane] ... from all claims, demands, and causes of action ...")

■ Derr's reliance on *Dresser* is misplaced. There is nothing in *Dresser* which precludes a contractual provision from being both an indemnity provision and a release within the same paragraph. It would be illogical to hold that if the provision were separated out into two separate paragraphs they would be valid, but if they are contained in a single paragraph they become invalid.

■ Derr makes two other arguments in which it contends that the release is invalid or cannot be relied upon by the appellees. The first of these arguments is a third-party beneficiary argument in which Derr argues that the City and Gilbane were not parties to the contract between Derr and Blount, and therefore cannot rely on any of the contract provisions in order to escape liability except as third-party beneficiaries. Derr claims that the City and Gilbane are not third party beneficiaries to the contract, but merely incidental beneficiaries. The cases cited by Derr itself defeat this argument. Several of the cases cited by Derr state that parties are presumed to have contracted only for themselves unless it "clearly appears" that they intended a third party to benefit from their contract. *Fidelity Sav. & Loan Ass'n v. Morrison & Miller, Inc.*, 764 S.W.2d 385, 387 (Tex.App.—Beaumont 1989, no writ), *citing Corpus Christi Bank & Trust v. Smith*, 525 S.W.2d 501, 503–04 (Tex.1975); *Republic Nat'l Bank v. National Bankers Life Ins. Co.*, 427 S.W.2d 76, 79 (Tex.Civ. App.—Dallas 1968, writ ref'd n.r.e.); *Stahl*

*v. Rawlins,* 304 S.W.2d 549, 556 (Tex.Civ. App.—Dallas 1957, writ ref'd n.r.e.). Derr also cites these cases for the proposition that third-party beneficiary status is usually an issue for a jury to determine. The key word in that statement is "usually." In this case, it clearly appears from the terms of the provision that the City and Gilbane were intended to benefit from the contract. The City and Gilbane are specifically mentioned in the release. Thus, by the terms of the agreement itself, the City and Gilbane were to benefit from the contract as a matter of law. It is a tenet of contract law that generally in contract interpretation, the instrument itself will be deemed to express the intentions of the parties because objective, not subjective, intent controls. *City of Pinehurst v. Spooner Addition Water Co.,* 432 S.W.2d 515, 518 (Tex.1968). In other words, the question is not what the parties meant to say, but what they did say. *Republic Nat'l Bank,* 427 S.W.2d at 80. Therefore, Mr. Derr's self-serving statements in his affidavit of what Derr intended in the contract are of no consequence. The case which Derr contends is directly on point is *B & C Constr. Co. v. Grain Handling Corp.,* 521 S.W.2d 98 (Tex.Civ.App.—Amarillo 1975, no writ). In *B & C,* United Steel contracted with Castro County to build a grain storage building on the property owned by Grain Handling. United Steel then subcontracted with B & C for the erection of the building. After the building was finished, Grain Handling took possession. Soon after Grain Handling took possession, the building collapsed. Grain Handling brought suit against the County, United Steel and B & C. The contested issue in the case concerned venue. *Id.* at 101. The question was whether Grain Handling was a third-party beneficiary to the contract between United Steel and B & C. The court noted that it is presumed that parties contract for themselves and not for the benefit of a third party unless it clearly appears that such was the intent of the contracting parties. *Id.* Reviewing the subcontract between United Steel and B & C, the court stated that there was nothing in the instrument pertaining to, or stating that the grain storage building was being constructed for Grain Handling, and

therefore, the court held that it did not clearly appear from the terms of the subcontract that the contracting parties intended to bestow a benefit on Grain Handling. *Id.* at 101–02.

Unlike the subcontract in the *B & C* case, the subcontract between Derr and Blount specifically refers to the City and the construction administrator, Gilbane, as well as Blount. Therefore, from this express language it "clearly appears" that the parties to the subcontract intended to benefit the City and Gilbane by releasing them from liability. *See also, Winkler v. Kirkwood Atrium Office Park,* 816 S.W.2d 111 (Tex. App.—Houston [14th Dist.] 1991, writ denied) (a party may claim protection of a release if it is referred to with descriptive particularity such that connection with the event is without doubt). Derr's third-party beneficiary argument is without merit.

■ In connection with this same argument, Derr contends that neither the City nor Gilbane can rely on the release provision unless they proved as a matter of law that Blount was not in breach of the subcontract. The cases relied on by Derr in support of this proposition were not summary judgment cases, they were jury cases in which the jury expressly found breach of contract. *See Baker Marine Corp. v. Weatherby Eng'g Co.,* 710 S.W.2d 690, 696 (Tex.App.—Corpus Christi 1986, no writ). Appellant cites no authority which would impose a duty upon a summary judgment movant to negate all potential claims before being allowed to rely on a release provision. The law in Texas is in fact quite the opposite. *See Federated Dept. Stores, Inc. v. Houston Lighting & Power Co.,* 646 S.W.2d 509 (Tex.App.—Houston [1st Dist.] 1982, no writ) (contractual limitation of liability is prima facie defense to claim and burden shifts to non-movant to offer evidence to defeat same); *Porter v. Lumbermen's Inv. Corp.,* 606 S.W.2d 715 (Tex.Civ. App.—Austin 1980, no writ) (when movant proves affirmative defense burden shifts to non-movant to offer proof avoiding affirmative defense). In this case, the City and Gilbane made out a prima facie case based on the release provision and Derr failed to

present any proof that Blount had breached the subcontract.[1]

The final argument made by Derr is that the subcontract is ambiguous, and therefore, the trial court erred in granting summary judgments in favor of the appellees. Derr contends that the release/indemnity provision in the subcontract between Derr and Blount is in conflict with certain provisions of the general contract between Blount and the City which is incorporated by reference into the subcontract. The provisions in the general contract to which Derr refers generally state that Blount is responsible for damages to person or property caused by its own negligence.

 Whether a contract is ambiguous is a question of law for the court. *City of Pinehurst,* 432 S.W.2d at 518; *Phillips v. Union Bankers Ins.,* 812 S.W.2d 616, 620 (Tex.App.—Dallas 1991, n.w.h.). Generally, the parties to an instrument intend every clause to have some effect and in some measure to evidence their agreement. *City of Pinehurst,* 432 S.W.2d at 518. When provisions in an agreement appear to be in conflict, the court should examine and consider the entire writing, seeking to harmonize and reconcile the conflicting provisions to the greatest extent possible. *Manzo,* 731 S.W.2d at 676, *citing Ogden v. Dickinson State Bank,* 662 S.W.2d 330, 332 (Tex. 1984). In achieving this objective, the court should favor an interpretation that gives effect to all provisions of the contract so that none will be rendered meaningless and the primary purpose of the agreement and intent of the parties will be effectuated. *Manzo,* 731 S.W.2d at 676, *citing R & P Enter. v. LaGuarta, Gavrel & Kirk,* 596 S.W.2d 517, 519 (Tex.1980). If a contract can be given a certain definite legal meaning or interpretation it is not ambiguous. *Universal C.I.T. Credit Corp. v. Daniel,* 150 Tex. 513, 243 S.W.2d 154, 157 (1951). When a case involves the interpretation of a contract and the contract is found to be unambiguous, summary judgment is proper. *RGS, Cardox Recovery, Inc. v. Dorchester Enhanced Recovery Co.,* 700 S.W.2d 635, 638 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.).

 The provisions from the general contract which Derr claims are in conflict with the release/indemnity provision of the subcontract can be harmonized so that meaning may be given to all the provisions. In the general contract, Blount has agreed with the City to be generally liable for damages, however, in the subcontract between Derr and Blount, Derr has agreed to assume responsibility for any damages to persons or property resulting from its work, thereby alleviating part of the duty imposed on Blount in the general contract. There is no conflict between the two contracts, and the contract is not ambiguous.

Indulging every inference in favor of the non-movant, we hold that the provision in the subcontract constitutes a release coupled with an indemnity provision. Based on the release, the summary judgments in favor of the appellees were proper. Since we have determined that summary judgment was proper based on the release contained in the subcontract, it is unnecessary to review the appellees' other grounds in support of summary judgment. *See Rogers,* 772 S.W.2d at 79–80. Derr's sole point of error is overruled.

The judgment of the trial court is affirmed.

---

1. During oral argument, Derr's attorney seemed to argue that even if the release provision were applicable, it only released the appellees from the negligence claims asserted by Derr and not the breach of contract claims. We disagree. The entire suit is based on damage to the crane. The release provision clearly covers any claim arising from property damage whether the same be couched in terms of negligence or breach of contract. Once the appellees proved they were released as a matter of law, the burden shifted to Derr to raise a defense to the release. *See Federated,* 646 S.W.2d at 511; *Porter,* 606 S.W.2d at 717.