**Irving WALLERSTEIN, Appellant,**

v.

**Jack SPIRT, Sol Freed, and William H. Freed, Appellees.**

**No. 03–99–00106–CV.**

Court of Appeals of Texas, Austin.

Dec. 23, 1999.

B. Neal Meinzer, Hohmann, Werner & Taube, L.L.P., Austin, for Appellant.

Stephen A Roberts, Griggs & Harrison, P.C., Austin, for Appellees.

Before Chief Justice ABOUSSIE, Justices KIDD and YEAKEL.

LEE YEAKEL, Justice.

Appellant Irving Wallerstein appeals the district court's summary judgment in favor of appellees, Jack Spirt, Sol Freed, and William H. Freed (together "plaintiffs"). Their dispute arises from a limited partnership in which Wallerstein is the general partner and plaintiffs are some of the limited partners. After first obtaining a judgment against the partnership in federal court, plaintiffs, as judgment creditors, were granted a summary judgment by the state district court against Wallerstein as the partnership's general partner. Wallerstein complains on appeal that: (1) the partnership agreement expressly relieves Wallerstein of personal liability to all limited partners, including plaintiffs; (2) in the alternative, the partnership agreement is ambiguous regarding whether Wallerstein is personally liable to plaintiffs, thus creating a material fact issue precluding summary judgment; and (3) further in the alternative, if this Court holds the partnership agreement does not release Wallerstein from personal liability, then the doctrine of mutual mistake precludes summary judgment. Because we hold that the partnership agreement is unambiguous and does not release Waller-

stein from personal liability to plaintiffs, we will affirm the district court's summary judgment.

## BACKGROUND

In early November 1984, Wallerstein, as trustee, acquired a parcel of real estate in San Marcos. He signed a promissory note, as trustee, in the amount of $775,000 payable to Interfirst Bank. The note was secured by a deed of trust on the property. Shortly thereafter Wallerstein formed a joint venture "to engage in the ownership, leasing, management, improvement or sale" of the property. The joint-venture agreement named ten partners, with Wallerstein as the managing partner.[1] To further secure the note, Interfirst required all partners to execute guaranty agreements to the extent of their respective interests in the joint venture.[2] In May 1991 Wallerstein, Joel Wallerstein, Rhonna Wallerstein Berns,[3] and plaintiffs signed an amendment to the joint-venture agreement. The amendment states that all other original partners had assigned or forfeited their interests in the venture, and plaintiffs and Wallerstein consented to the admission of Joel Wallerstein and Rhonna Wallerstein Berns to the venture.

Between the formation of the joint venture and the signing of the amendment, Interfirst Bank merged into and become known as First RepublicBank Austin, N.A., First Republic had been declared insolvent, and the Federal Deposit Insurance Corporation ("FDIC") had been appointed receiver of First Republic.[4] The note, which had been modified, renewed, and extended several times, had matured.

In order to extend the note yet again, Wallerstein entered into negotiations with the FDIC. Apparently at the behest of the FDIC, between the time of the signing of the amendment in May 1991 and the end of the year, the partners signed a trust agreement that makes no mention of the amendment. It states that the joint venture "dissolved as a matter of law" on June 4, 1990, the date on which one of the original partners filed a petition in bankruptcy, and that "the joint venturers chose not to continue the partnership." The trust agreement further reflects that Wallerstein had since the "dissolution" acted as trustee for the "beneficial owners" pursuant to an agreement between them and Wallerstein. The beneficial owners are identified as Joel Wallerstein, Rhonna Wallerstein Berns, and plaintiffs. A second limited partnership, San Marcos Properties, Ltd., was formed, with Wallerstein as the general partner and plaintiffs, Joel Wallerstein, and Rhonna Wallerstein Berns as limited partners. Although the partnership agreement was signed to be effective October 31, 1991, the limited-partnership certificate was filed with the Secretary of State in December 1991. Like the trust, the limited partnership appears to have been formed at the urging of the FDIC in order to obtain a further renewal and extension of the note.

In January 1992, but effective October 1, 1990, Wallerstein, as trustee, signed and delivered to the FDIC a fifth and final modification, renewal, and extension of the

1. The other nine original partners were plaintiffs Jack Spirt and Sol Freed, Richard A. Berns, Charles N. Cole, Irwin Salmonson, Travis Telecommunications, Inc., John L. Hagen, Alvin M. Herzmark and Harry Weiss. Travis Telecommunications' interest was transferred to Joel Wallerstein and plaintiff William Freed.

2. Plaintiffs signed guarantees as follows: Jack Spirt—$77,500; Sol Freed—$77,500; William Freed (jointly with Joel Wallerstein)—$155,000.

3. Rhonna Wallerstein Berns is the former wife of Richard A. Berns, an original partner in the joint venture, and received his interest in their divorce proceedings. She is referred to in the record as Rhonna Berns and as Rhonna Wallerstein.

4. At or about the time it became receiver of First Republic, the FDIC assigned the note and guaranty agreements to NCNB Texas National Bank. In November 1991 NCNB assigned the instruments back to the FDIC.

note and deed of trust. By the terms of the modification and renewal, the note was to mature October 1, 1992. The note was not paid at maturity. In August 1993 Wallerstein, Joel Wallerstein, and Rhonna Wallerstein Berns reached an agreement with the FDIC that released and discharged them from all liability on the note and their guaranty agreements. Plaintiffs, however, were not parties to this settlement and were not released.

Within a week, the FDIC transferred and assigned the note and plaintiffs' guaranty agreements to Polo Club Office Park. In January 1994 Polo Club sued plaintiffs in federal court on the note and plaintiffs' personal guaranties. Plaintiffs settled with Polo Club and then in the federal case sought indemnification from the partnership for the amounts paid to Polo Club, as well as their attorney's fees and costs incurred both in defending Polo Club's suit and in prosecuting their indemnity action. Upon the success of their indemnity action, plaintiffs filed this suit against Wallerstein asserting, *inter alia,* that as the limited partnership's general partner he was personally liable for the debts of the partnership and thus liable to plaintiffs, as judgment creditors, for the federal-court judgment. *See* Tex.Rev.Civ. Stat. Ann. art. 6132a–1, § 4.03(b) (except as provided by partnership agreement, general partner in limited partnership has same liabilities as partner in general partnership), art. 6132b–3.04 (partner in general partnership is liable for debts and obligations of partnership) (West Supp.2000).[5] On plaintiffs' motion, the district court granted partial summary judgment against Wallerstein on this basis and assessed damages against

him in favor of plaintiffs.[6] On appeal, Wallerstein complains that plaintiffs are not entitled to summary judgment because (1) the partnership agreement expressly relieves Wallerstein of personal liability to the limited partners; (2) in the alternative, the partnership agreement is ambiguous, creating a fact issue; and (3) as a further alternative, if the partnership agreement does not relieve Wallerstein of liability, then the doctrine of mutual mistake applies.

## DISCUSSION

The parties do not dispute the material facts of this case insofar as the language of the partnership agreement *as written* is concerned. They agree, and we concur, that Wallerstein, as general partner, is personally liable to plaintiffs for the federal-court judgment pursuant to the Texas Revised Limited Partnership Act[7] unless the partnership agreement releases him from such liability. *See id.* Consequently, the issue presented on appeal, the interpretation of the partnership agreement, is purely a question of law. *See Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.,* 940 S.W.2d 587, 589 (Tex. 1996) (determining whether contract is ambiguous is question of law); *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983) (if contract is unambiguous, court will construe contract as question of law). "The propriety of summary judgment is a question of law." *Grocers Supply Co. v. Sharp,* 978 S.W.2d 638, 642 (Tex.App.—Austin 1998, pet. denied) (citing *Natividad v. Alexsis, Inc.,* 875 S.W.2d 695, 699 (Tex.1994)). We review the district court's decision *de novo* to determine whether plaintiffs were enti-

---

**5.** Since the granting of the summary judgment, the general-partnership provision at issue has been recodified without change. We will cite the current codification for convenience. *See* Tex.Rev.Civ. Stat. Ann. art. 6132b–3.04 (West Supp.2000).

**6.** Plaintiffs also sued Rhonna Wallerstein Berns and Joel Wallerstein. Richard A. Berns, the former husband of Rhonna Wallerstein Berns, is a plaintiff in the district court

but is not a party to the motion for partial summary judgment. The district court severed the claim subject to the partial summary judgment from *all* plaintiffs' other claims, resulting in a final judgment in favor of only Jack Spirt, Sol Freed, and William H. Freed against only *Irving* Wallerstein.

**7.** Tex.Rev.Civ. Stat. Ann. art. 6132a–1 (West Supp.2000).

tled to judgment as a matter of law. *See id.; Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548 (Tex.1985).

 When construing a written contract, we "ascertain the intent of the parties as expressed in the instrument." *National Union Fire Ins. Co. v. CBI Indus., Inc.,* 907 S.W.2d 517, 520 (Tex.1995). In deciding whether a contract is ambiguous, we consider the written instrument as a whole and determine if it is subject to more than one reasonable interpretation in light of the circumstances present at the time of its formation. *See Grain Dealers Mut. Ins. Co. v. McKee,* 943 S.W.2d 455, 458 (Tex.1997). If the contract can be given a certain or definite legal meaning, then it is not ambiguous and should be construed as a matter of law. *See id.; National Union,* 907 S.W.2d at 520. An ambiguity does not arise simply because the parties advance different interpretations of the contract's language. *See Grain Dealers,* 943 S.W.2d at 458.

### Release vs. Indemnity

The partnership agreement provides in relevant part:

> *Liabilities of the Partners.* All obligations, expenses and losses incurred, and all payments made by the Partners in connection with the Partnership and the Property from and after the date hereof, including without limitation payments due on mortgages or other indebtedness incurred in connection with the Property, and any liability for damages arising out of claims or actions against any of the Partners on account of ownership of the Property, shall be obligations of the Partnership if made or incurred in accordance with the terms hereof (such obligations are hereinafter referred to as "Partnership Obligations"). *No limited Partner shall have any personal liability for the payment of Partnership Obligations. The*

> *Partnership (but not the Partners individually) shall indemnify and hold each Partner harmless* in respect of all payments reasonably made and personal liabilities reasonably incurred by each Partner in the ordinary and proper conduct of the Partnership's business or for the preservation of its business or property.

(Emphasis added.) The emphasized language is at issue in this appeal.[8] By his first two issues, Wallerstein claims that the language releases him from liability to plaintiffs or, in the alternative, is at least ambiguous in that regard. Plaintiffs argue that the language clearly and unambiguously does not release Wallerstein. We agree with plaintiffs.

 Wallerstein asserts that because the partnership agreement provides that no partner shall indemnify another partner, he, as general partner, cannot be personally liable to plaintiffs. Wallerstein, however, confuses an indemnity agreement with a release of liability. A release and an indemnity have characteristics distinct from each other. *See Derr Constr. Co. v. City of Houston,* 846 S.W.2d 854, 858 (Tex. App.—Houston [14th Dist.] 1992, no writ). A release extinguishes a claim or cause of action as would a prior judgment and is an absolute bar to any suit on the released matter. *See Dresser Indus., Inc. v. Page Petroleum, Inc.,* 853 S.W.2d 505, 508 (Tex. 1993); *Derr Constr.,* 846 S.W.2d at 858. An indemnity arises from a promise by the indemnitor to safeguard or hold harmless against existing or future loss, liability, or both. *See Dresser Indus.,* 853 S.W.2d at 508; *Derr Constr.,* 846 S.W.2d at 858. Unlike a release, which suppresses a cause of action, an indemnity creates a potential cause of action between the indemnitee and the indemnitor. *See Dresser Indus.,* 853 S.W.2d at 508; *Derr Constr.,* 846 S.W.2d at 858. A release extinguishes any

---

**8.** "Partners" is defined in the agreement to include both the general partner and the limited partners.

actual or potential claims the releasor may have against the releasee without regard to third parties. *See Derr Constr.*, 846 S.W.2d at 858. In contrast, an indemnity does not apply to claims between the parties to the agreement. *See id.* Rather, it obligates the indemnitor to protect the indemnitee against claims brought by persons not a party to the provision. *See id.* Typical release language is generally "release, discharge, relinquish." *Id.* at 859. Typical indemnity language is "indemnify, save, protect, save/hold harmless." *Id.*

■ We hold that the clear and unambiguous language of the partnership agreement constitutes an indemnity and not a release, and therefore Wallerstein is not released from liability to plaintiffs. *See Dresser Indus.*, 821 S.W.2d at 363 (finding similar language to be indemnity and not release). We are further persuaded to so hold because the partnership agreement clearly releases *limited* partners from any liability ("No limited Partner shall have any personal liability for the payment of Partnership Obligations") but does not so release the general partner.

■ Wallerstein urges that only partnership assets can be reached to satisfy the federal-court judgment because the partners are not liable to each other for indemnity. Plaintiffs, however, are not asking Wallerstein to indemnify them. Rather, because they sought and received indemnification against the partnership, they now are seeking to collect that judgment against Wallerstein. In other words, plaintiffs have a judgment against the partnership and are looking to hold the general partner liable for that judgment debt. *See* Tex.Rev.Civ. Stat. Ann. art. 6132a–1, § 4.03(b), art. 6132b–3.04. The fact that plaintiffs are also limited partners does not prevent them from seeking satisfaction as judgment creditors from the general partner of the partnership.

We overrule Wallerstein's first issue.

### *Ambiguity*

Wallerstein argues in the alternative that the partnership agreement is at least ambiguous as to whether it releases Wallerstein from liability to plaintiffs. Having held that the partnership agreement clearly and unambiguously does not release Wallerstein from liability to plaintiffs, we overrule Wallerstein's second issue.

### *Mutual Mistake*

Finally, as another alternative, Wallerstein contends that if this Court holds that the partnership agreement does not release him from liability to plaintiffs, then the agreement's failure to so release him "is a product of a mutual mistake of the parties, creating a fact issue as to whether the Partnership Agreement requires reformation." Here, the parties join issue as to whether the partnership agreement *as written* sets out their true agreement.

■ The standards for reviewing a motion for summary judgment are well established: (1) the movant for summary judgment has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *See Nixon*, 690 S.W.2d at 548–49. The function of summary judgment is not to deprive litigants of the right to trial by jury, but to eliminate patently unmeritorious claims and defenses. *See Swilley v. Hughes*, 488 S.W.2d 64, 68 (Tex.1972).

■ A party seeking to avoid the contract on the grounds of mutual mistake must show "(1) a mistake of fact, (2) held mutually by the parties, and (3) which materially affects the agreed-upon exchange." *de Monet v. PERA*, 877 S.W.2d 352, 357 (Tex.App.—Dallas 1994, no writ) (citing Restatement (Second) of Contracts § 152 (1981)). When a party alleges mu-

tual mistake, the court should not interpret the language contained in the contract but should determine whether the contract itself is valid. *See Williams v. Glash,* 789 S.W.2d 261, 264–65 (Tex.1990). If it can be established that a contract sets out a bargain that was never made, it will be invalidated. *See id.* Reformation is available to correct a mutual mistake made in preparing a written instrument so that the instrument reflects the original agreement of the parties. *See Cherokee Water Co. v. Forderhause,* 741 S.W.2d 377, 379 (Tex. 1987). Reformation requires two elements: (1) an original agreement and (2) a mutual mistake, made after the original agreement, in reducing the original agreement to writing. *See id.*

 To show mutual mistake, Wallerstein offers, as summary-judgment proof, his own affidavits and that of the attorney who drafted the limited-partnership agreement. Insofar as the affidavits pertain to the partnership agreement, they are virtually identical. Both the attorney, who is described as representing *Wallerstein,* as opposed to either the *partnership* or *all of the partners,* and Wallerstein aver that before reducing the agreement to writing, Wallerstein and plaintiffs agreed that "only the limited partnership and not any of the partners (whether general or limited partners) would be liable to a partner for any payments made by a partner towards a partnership obligation." The affidavits also assert that all parties agreed that "if any partner or partners had to make a payment on the mortgage or to preserve or protect the real property at issue … no partner, including the general partner, would be obligated individually to reimburse such payments to such partner or partners." According to the affidavits, the parties agreed that "none of the partners would have any personal obligation and/or liability to repay and/or indemnify any amounts individually paid by a Partner towards an obligation of the Partnership, including amounts paid on the Note, if any." The summary-judgment proof presented by Wallerstein does not suggest that the written partnership agreement is the result of a mutual mistake by the parties. An affidavit is insufficient to create a fact issue unless the statements are direct, unequivocal, and perjury can be assigned to them. *See Brownlee v. Brownlee,* 665 S.W.2d 111, 112 (Tex.1984); *AU Pharmaceutical, Inc. v. Boston,* 986 S.W.2d 331, 338 (Tex.App.— Texarkana 1999, no pet.). The affidavits allude to the concept of a release but never unequivocally enunciate a previous agreement intended to release Wallerstein of his obligations as general partner or to render him free of liability for the debts of the partnership. The affidavits, like the partnership agreement, are couched in language of indemnification, not release. At best, they may raise an issue of unilateral mistake, but the affidavits are insufficient under *Brownlee* to propound an issue of mutual mistake. *See Brownlee,* 665 S.W.2d at 112.

 We hold that Wallerstein has not raised mutual mistake by summary-judgment proof that simply and clearly posits the existence of a previous agreement materially different from the one reduced to writing. To hold otherwise would necessitate a trial to a jury in all cases where a party seeks to avoid the consequences of a written agreement. "The doctrine of mutual mistake must not be routinely available to avoid the results of an unhappy bargain. Parties should be able to rely on the finality of freely bargained agreements." *Williams,* 789 S.W.2d at 265. We conclude that Wallerstein's summary-judgment evidence does not fit the narrow circumstances where a fact issue regarding mutual mistake is raised. We thus overrule Wallerstein's third issue.

## CONCLUSION

Having overruled all of appellant's issues, we affirm the district court's judgment.