Affirmed and Majority and Concurring Opinions filed April 21, 2005









Affirmed
and Majority and Concurring Opinions filed April 21, 2005.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-04-00364-CV

____________

 

NORTHBOROUGH CORPORATE LIMITED
PARTNERSHIP, L.L.P., Appellant

 

V.

 

CUSHMAN & WAKEFIELD OF TEXAS,
INC.,
Appellee

 



 

On Appeal from the 151st
District Court

Harris County, Texas

Trial Court Cause No. 02-34003

 



 

M A J O R I T Y   O P I N I O N

This appeal arises from a suit Cushman & Wakefield of
Texas, Inc. (“Cushman”) filed  for lease
brokerage commissions allegedly due it from Northborough Corporate Limited
Partnership, L.L.P. (“Northborough”). 
Although both parties moved for summary judgment, the court granted
Cushman’s motion.  Northborough now
appeals both that decision and the trial court’s denial of Northborough’s own
motion for summary judgment.  

Factual Background








Cushman, the plaintiff below, is a
real estate brokerage firm.  Northborough
owns a Houston office building that was the subject of a lease brokerage
commission agreement between Cushman and the building’s former owner, Alliance
Enterprises, Inc.[1]  This appeal’s factual background is
complicated not only by the change in the building’s ownership, but also by the
fact that the original lease was renewed and assigned several times.  The parties dispute whether the present lease
was a “new arrangement” that negated Northborough’s obligation to pay Cushman’s
commissions under a previous lease, and whether Northborough assumed Alliance’s
obligation to pay Cushman’s commissions under a subsequent lease agreement.

Cushman
and Alliance enter into a commissions agreement (Texaco lease).  

In 1988, Alliance agreed to pay Cushman a real estate
brokerage commission if Texaco or any of its affiliates, subsidiaries, or
nominees became a tenant of Alliance’s office building.  Texaco did become a tenant of the
building.  The schedule of commissions
provided that, if the lease was renewed or extended, or if a tenant leased
additional space, Alliance would pay an additional commission to Cushman.  The schedule of commissions obligated
Alliance to pay Cushman’s commissions in the event Alliance sold its interest
in the property, and also obligated Alliance to ensure that the new owner
agreed in writing to assume Alliance’s obligation to pay Cushman’s commissions
under the agreement.  The parties agree
that Alliance fully paid Cushman’s commissions related to the Texaco lease.

Texaco assigns its
lease to Star Enterprises (Star lease).








In 1993, Texaco assigned its lease
of the office building to Star Enterprises. 
Star Enterprises was a joint venture between Texaco and Aramco Services.
 When the original Texaco lease ended in
1994, Alliance entered into a “Renewal and Amendment of Lease” with Star.  The Star lease was for a ten-year term
beginning August 1, 1994 and ending in August of 2004.  Cushman acted as the lease broker for Star and,
once again,  Alliance agreed to pay
Cushman’s commission.  Again, the parties
agree that Alliance paid Cushman’s commissions while Star was the building’s
tenant.  Like the original Texaco lease,
the Star lease permitted Star to assign its lease, which Star later did. 

Alliance
sells the building to Northborough.

Four years into the Star lease, Northborough purchased the
office building from Alliance.   In the
purchase agreement, Northborough agreed to assume Alliance’s obligation to pay
Cushman’s commissions with respect to the Star lease.  Cushman did not represent Alliance or
Northborough in connection with the purchase of the office building. 

Equiva
leases from Northborough (Equiva lease).

In August of 1999, with five years remaining on the Star
lease, Star assigned its lease to Equiva, a Texaco joint venture between Texaco
and Shell Oil Company.  Cushman did not
participate in the lease negotiations and, in the Equiva lease, Equiva and Northborough
represented they did not have a broker.  

Immediately after this, Northborough entered into an
“Amended and Restated Lease” with Equiva. 
At that point, Northborough stopped paying Cushman’s commissions and
refused Cushman’s demands to do so.  

Procedural History

In 2002, Cushman sued Alliance and Northborough, seeking
commissions for the remaining time period on the ten-year Star lease.  Alliance was dismissed from the suit because
it was dissolved more than three years before Cushman filed suit.  Cushman filed a motion for partial summary
judgment asserting that Northborough owed it commissions based on the Star
lease.  The trial court granted Cushman’s
motion for partial summary judgment but denied Northborough’s motion for
summary judgment, in which Northborough gave several reasons Cushman could not
prevail.  In the final judgment, the
trial court found that Northborough was liable to Cushman for Cushman’s
commissions through August of 2004—when the Star lease would have ended—and
also awarded Cushman reasonable and necessary attorney’s fees.  This appeal followed.  








Standard of Review

Because both Cushman and Northborough moved for summary
judgment and the trial court granted Cushman’s motion and denied
Northborough’s, we must determine all questions that were presented to the
trial court.  FM Props. Oper. Co. v.
City of Austin, 22 S.W.3d 868, 872 (Tex. 2000) (“When both sides move for
summary judgment and the trial court grants one motion and denies the other,
the reviewing court should review both sides’ summary judgment evidence and
determine all questions presented.”) 
(citing Comm’rs Court of Titus County v. Agan, 940 S.W.2d 77, 81
(Tex. 1997)).  Each party “bears the
burden of establishing that it is entitled to judgment as a matter of
law.”  City of Garland v. Dallas
Morning News, 22 S.W.3d 351, 356 (Tex. 2000) (citing Guynes v. Galveston
County, 861 S.W.2d 861, 862 (Tex. 1993)). 
When a trial court’s order granting summary judgment does not specify
the grounds, we must affirm if any of the summary judgment grounds have
merit.  FM Props Oper. Co., 22
S.W.3d at 872 (citing Star-Telegram, Inc. v. Doe, 915 S.W.2d 471, 473
(Tex. 1995)). 

Northborough asserts the trial court erred in concluding
that Northborough assumed Alliance’s obligation to pay commissions on the
Equiva lease.  Additionally, Northborough
urges us to find that the original lease commission agreement between Alliance
and Cushman is void because it lacks a termination date.  Alternatively, Northborough argues that,
should we find Northborough fully assumed Alliance’s obligations under the
original commission agreement and the agreement is enforceable, the trial court
erred in granting Cushman’s motion for summary judgment because it raised a
fact issue as to whether the Equiva lease was a “new arrangement,” meaning that
Cushman would not be entitled to any commission for the Equiva lease.  

Cushman contends the original commission agreement is
enforceable.  Cushman also asserts that
Northborough was obligated to pay Cushman’s commissions until the expiration of
the Star lease in 2004 because Northborough assumed Alliance’s obligation to do
so and because the Equiva lease did not supersede or vitiate the Star lease.








The
parties’ arguments require us to construe Cushman’s commission agreement, which
no one claims is ambiguous.  When we
construe a contract, we are to seek the parties’ intent as expressed in the
contract.  J.M. Davidson, Inc. v.
Webster, 128 S.W.3d 223, 229 (Tex. 2003) (stating court’s primary concern
is to ascertain the parties’ true intentions as expressed in the instrument); Clear
Lake City Water Auth. v. Kirby Lake Dev., Ltd., 123 S.W.3d 735, 743 (Tex.
App.—Houston [14th Dist.] 2003, pet. denied) (same).  We must give effect to all of the contract’s
clauses and read them in such a way that any potential conflicts are
harmonized.  See Ogden v. Dickinson
State Bank, 662 S.W.2d 330, 332 (Tex. 1983); see also Derr Constr. Co v.
City of Houston, 846 S.W.2d 854, 862 (Tex. App.—Houston [14th Dist.] 1992,
no writ) (stating court should examine the entire writing “seeking to harmonize
and reconcile the conflicting provisions to the greatest extent possible”)
(citations omitted).

Analysis

We will first address whether the original lease commission
agreement is void, as Northborough suggests, because it lacks a termination
date.  

The original lease
commission agreement is not void for lack of a termination date.

As Northborough points out, the
original lease commission agreement between Cushman and Alliance does not
contain an express termination date. 
Northborough argues that this makes the commission agreement
unenforceable.  In response, Cushman
argues that a termination date is not required, but if it is required, the date
is supplied by the underlying lease. 
Because we reject Northborough’s argument that an express termination
date is statutorily required under the facts of this case as a prelude to
recovery,  we do not address whether the
termination date could be supplied by implication from the underlying lease.

Our determination is guided by section 1101.806(c) of the
Real Estate License Act, which governs when a person may sue to recover a
commission for the sale of real estate. 
“A person may not maintain an action in this state to recover a
commission for the sale or 

 








purchase
of real estate unless the promise or agreement on which the action is based, or
a memorandum, is in writing and signed by the party against whom the action is
brought or a person authorized by that party to sign the document.”  Tex.
Occ. Code §1101.806(c).  Thus, to
be actionable—and, consequently, enforceable—a commission agreement must be “in
writing and signed by the party to be charged.” 
Trammel Crow Co. No. 60 v. Harkinson, 944 S.W.2d 631, 635 (Tex.
1997).  These code provisions governing
the recovery and payment of commissions consider a lease a “sale” and therefore
also allow recovery of a commission for a lease.  Tex.
Occ. Code § 1101.002(5).  The
commission agreement between Alliance and Cushman clearly satisfies these
requirements—the agreement is in writing and is signed by the executive vice
president of Alliance.  

Northborough, relying on section 1101.652(b)(12) of the
Real Estate License Act and Perl v. Patrizi, urges us to find that
a broker’s failure to specify a termination date in the commission agreement
precludes the broker from suing for commissions.  See Tex.
Occ. Code § 1101.652(b)(12); Perl v. Patrizi, 20 S.W.3d 76, 80
(Tex. App.—Texarkana 2000, pet. denied). 
This section, entitled “Grounds for Suspension or Revocation of
License,” allows the Texas Real Estate Commission to suspend or revoke a
broker’s license if the broker “fails to specify a definite termination date
that is not subject to prior notice in a contract.”  Tex.
Occ. Code § 1101.652(b)(12). 
Based on this section, another court of appeals has held that a broker
cannot enforce a commission agreement if it lacks a termination date.  See Perl, 20 S.W.3d at 80 (finding the
failure to provide a termination date is a failure to meet a condition
precedent that renders the contract unenforceable).  We decline to follow Perl for the
reasons given below.

First, section 1101.652(b)(12), the section relied on by
the Perl court, has nothing to do with the enforceability of a broker’s
commission agreement.  Instead, it
relates solely to the suspension or revocation of a broker’s real estate
license.  Section 1101.806, on the other
hand, lists the requirements for a commission agreement in order for a broker
to recover the promised commission.








Second, nothing in section 1101.652 references a broker’s
ability to maintain a cause of action.  See
Tex. Occ. Code §1101.652.  As noted earlier, 1101.652 relates solely to
the suspension or revocation of a broker’s real estate license.  Id. § 1101.652(b).  Yet, section 1101.806 does state the
circumstances under which a broker may maintain a cause of action.  Id. § 1101.806.  As the Texas Supreme Court has noted, “[In
section 1101.806 t]he Legislature was quite explicit: a broker may not recover
a commission unless the commission agreement is in writing and signed by the
party to be charged.”  Trammel Crow,
944 S.W.2d at 635.  In section 1101.652,
we do not find the same legislative mandate. 
Cf. Tex. Occ. Code § 1101.652(b)(1),
(23) and § 1101.806.  For these
reasons, we disagree with the Perl court and conclude that the
commission agreement between Cushman and Alliance met the statutory
requirements for an enforceable commission agreement.

Cushman was
entitled to commissions on the Star lease.

Next, Northborough claims the trial
court wrongly concluded that the Equiva lease obligated Northborough to pay
Cushman real estate brokerage commissions because it assumed Alliance’s
agreement to pay the fees. But, the motion for summary judgment did not claim
that Cushman was entitled to broker fees under the Equiva lease and the trial
court did not hold that Northborough was obligated to pay Cushman broker fees
based on the Equiva lease.  The trial
court held that Northborough was required to pay broker fees based on the
original Texaco lease, which was renewed via the Star lease, and that
Northborough assumed Alliance’s obligations under the Texaco and Star
leases—including the obligation to pay Cushman broker fees until July 31,
2004.   








In our view, the real question before us is whether Cushman
was still entitled to commissions under the Star lease once Northborough
executed the Equiva lease. Northborough claims first that when it purchased the
building, it did not expressly assume the obligation to pay Cushman broker fees
on the Star lease.  It then claims that,
even if it did assume an obligation to pay Cushman on the Star lease, it still
is not obligated to pay Cushman broker fees because the Equiva lease, being a
“new arrangement” between Equiva and Alliance, replaced and superseded the Star
lease.  Thus, Northborough continues,
because a “new arrangement” was created and because Cushman was not involved in
the negotiation of that arrangement, Cushman was not entitled to recover
commissions under the lease.  

We find both of these arguments flawed and, as explained
below, we reach two conclusions: (1) under the Star lease, Northborough
explicitly assumed Alliance’s obligations to pay Cushman’s brokerage fees; and
(2) the Equiva lease was not a new arrangement that superseded the Star lease
and extinguished Northborough’s obligations under it.[2]  We consider first the assumption issue.

Northborough explicitly assumed the
obligation to pay commissions on the Star lease.

Northborough does not deny that the Star lease contains
language obligating Alliance to pay Cushman’s broker fees; it merely maintains
that once it purchased the building from Alliance, and entered into the Equiva
lease, the contract was not explicit enough to bind it to assume Alliance’s
obligation to pay Cushman’s commissions on the Star lease.  We conclude otherwise.








Under Texas law, a building’s purchaser must expressly
assume the obligation to pay a broker’s commission before the purchaser can be
held liable.  Regency Advantage Ltd.
P’ship v. The Bingo Idea-Watauga, Inc., 936 S.W.2d 275, 278 (Tex. 1996)
(per curium).  Here, Northborough did
expressly assume Alliance’s obligation to pay Cushman’s commissions generated
by the Star lease. Two sections of the purchase agreement specifically bind
Northborough.  First, section 2.1(b)
provides that Northborough would assume Alliance’s commission obligations
stated with particularity in another section of the agreement:  “[Northborough] shall assume [Alliance’s]
obligations under the commission agreement described in Section 12.1(h) arising
after the Closing Date.”  Section 12.1(h)
provides that Northborough would be responsible only for leasing commissions
owed to Cushman from the Star Lease:  “Except
for the leasing commission payable to [Cushman] with respect to the Star lease,
there are no leasing commissions accrued but unpaid with respect to any Lease
or which may become payable at any time prior to the Closing Date.”  We find this language sufficiently explicit
to prove, as a matter of law, that Northborough expressly assumed Alliance’s
obligation to pay Cushman’s commissions for the Star lease.[3]    

The Equiva lease
did not supercede the Star lease, nor extinguish Northborough’s obligation to
pay Cushman’s commissions under it.

Finally, we address Northborough’s
assertion that the Northborough/Equiva lease agreement, which we have called
the Equiva lease, was a “new arrangement” that extinguished
Alliance’s/Northborough’s obligations under the Star lease.  As proof of this, it points to the following
sentence contained in the brokerage agreement Alliance executed with Cushman:

If the tenant
remains under a new arrangement, then C&W [Cushman] shall not be entitled
to a commission for a period greater than the term of the original letting
unless, however, C&W [Cushman] participates in the new negotiations.








This sentence, Northborough claims, holds
two keys to its claimed release from obligation on the Star lease.  First, seizing upon the phrase “new
arrangement,” which is not defined in the agreement, it points out that its
lease with Equiva involved more space and different parties than the Star
lease, making the Equiva lease a “new arrangement.”[4]  Second, it notes that Cushman did not
participate in the negotiations that culminated in the Equiva lease and thus is
not entitled to broker fees.  By focusing
on this one sentence, however, Northborough (1) 
ignores the remainder of the commission agreement which clarifies and
narrows the “new arrangement” section, and (2) ignores one practical
implication of its argument.    

First, the “new arrangement” sentence is
in a section entitled “Cancellation Clauses.” 
But this record contains no evidence to suggest that the Star lease was
ever cancelled.  Paragraph 6 states that
a lease is not cancelled “unless the tenant vacates the premises.”  That did not happen here; Equiva assumed
Star’s position in the Star lease through the “Assignment and Amendment of
Lease,” and the premises remained occupied. 
In fact, at oral argument, counsel for Northborough was unwilling to say
that the Star Lease was cancelled.  

Second, even if we were to conclude that
the Equiva lease somehow cancelled the Star lease, the evidence in this record
points to the conclusion that the cancellation would have been by mutual
agreement of the parties: representatives for Star, Equiva and Northborough
each signed the document by which Star assigned the lease to Equiva, and Equiva
and Northborough, the tenant and landlord, executed the “Amended and Restated
Lease.”  According to Section 6, “[i]f
the cancellation is by mutual agreement . . . [Cushman] shall be paid a
commission for the entire lease term. 
The Star lease’s entire term was ten years, or until August of 2004.








In short, nothing in the lease reflects
that the Star lease was cancelled.  But,
even if it were, this record supports the conclusion that it would have been
cancelled by mutual agreement of the tenant and landlord.  In that event, Cushman would have been
entitled to commission payments through August of 2004.  

Finally, we note that the practical result
of Northborough’s argument, rather than supporting Northborough’s position,
militates against it.  The logical
extension of Northborough’s argument is that it could extinguish its obligation
to pay Cushman merely by ignoring the current lease agreement—the Star
lease—and entering into a new one with its tenant.[5]  Yet, this contract was written to ensure that
Cushman would receive its commissions even if the lease was renewed or
extended, even if the lease was assigned, even, in some cases, if the lease was
cancelled.

As a result, we reject Northborough’s
contention that Cushman was not entitled to commissions because the Equiva
lease was a “new arrangement.”  The trial
court correctly concluded there was no issue of material fact.  Cushman was entitled to commissions until the
end of the Star lease term despite Star’s assignment to Equiva and Alliance’s
assignment to Northborough. 

Conclusion








In conclusion, despite the lack of an
express termination date in the original agreement, Cushman and Alliance
entered into an enforceable commission agreement with respect to the Star
lease.  Further, Northborough expressly
assumed, and is properly held liable for, Alliance’s obligation to pay
Cushman’s commission for the duration of the Star lease.  Finally, we have determined that the
obligation to pay commissions related to the Star lease extended through its
ten-year lease term.  This obligation was
not terminated by Star’s assignment of the lease to Equiva, or by the actions
of Equiva and Northborough when they entered into an Amended and Restated Lease
agreement.  We conclude the trial court
properly denied Northborough’s motion for summary judgment and properly granted
Cushman’s motion for summary judgment. 
Having found no error in the trial court’s judgment, we affirm.

 

 

 

 

/s/        Wanda
McKee Fowler

Justice

 

Judgment rendered and Majority and
Concurring Opinions filed April 21, 2005.

Panel consists of Justices Fowler,
Edelman, and Frost.  (Edelman, J.,
concurring.)

 

 

 











[1]  Alliance was
Northborough’s predecessor in interest, having sold the building to Northborough
in 1998.  Alliance was also a defendant
below but is not a party to this appeal.





[2]  The Equiva
lease is before us only to enable us to determine if it extinguished
Northborough’s obligations to pay commissions under the Star lease. 





[3]  The cases
Northborough relies upon are distinguishable. 
In Lucas, the United States District Court for the Northern
District of Texas concluded that a general assumption of obligations was not
specific enough to obligate the new landlord to pay the broker’s
commission.  Harry B. Lucas Co. v.
Grand Dallas Warehouse, No. 3:01-CV-0938-M, 2002 WL 1489504, *5 (N.D. Tex.
Jul. 9, 2002) (not designated for publication). 
Here, Northborough specifically assumed Alliance’s obligation to pay
Cushman’s commissions in connection with the Star lease. In Duggan, the
Dallas court of appeals concluded that the commission agreement’s express
language made the broker’s commission contingent on the original landlord
owning the building.  Duggan v.
Northpark Central VEFII, L.P., No. 05-98-00099-CV, 2001 WL 985144, *2 (Tex.
App.—Dallas Aug. 29, 2001, no pet.) (not designated for publication).  Here, there is no express language in the
commission agreement that makes Cushman’s commission contingent upon Alliance
being the building’s owner nor upon Star being the building’s tenant.





[4]  We recognize
the Equiva lease contains slightly different terms than the Star lease,
specifically additional space and a longer time period.  Paragraph three of Cushman’s commission
agreement provides the following:

Where the ultimate terms of a renewal, extension or
lease of additional space do not strictly conform to the terms of the option or
right in the lease, C&W [Cushman] shall not be entitled to a commission for
any period or for any space in excess of that set forth in the
applicable lease provisions unless, however, C&W [Cushman] participates in
the new negotiations.

(emphasis added). 
The trial court’s judgment awarded Cushman commissions only for the
space and time period covered by the Star lease; no additional space or time
period covered by the Equiva lease was included.





[5]  For all practical purposes, that
happened in this case, for both Northborough and Equiva are successors in
interest who agreed to honor the obligations of their assignors; one of the
obligations Northborough agreed to assume was the Star lease.