COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO. 2-08-352-CV

 

 

NATIONAL CITY MORTGAGE COMPANY                                 APPELLANT

 

                                                   V.

 

CAROLYN A. ADAMS                                                             APPELLEE

 

                                              ------------

 

           FROM THE 141ST
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                OPINION ON REHEARING

 

                                              ------------

I.  Introduction

In one issue, Appellant National City Mortgage
Company (ANCM@) asserts that the trial court erred by failing
to enter a judgment awarding NCM its attorneys= fees. 
While we deny NCM=s
motion for rehearing, we withdraw our earlier opinion and judgment of February
25, 2010, and substitute the following. 
We affirm.

 








II.  Factual and Procedural History

In March 2003, Appellee Carolyn A. Adams
contracted with Steve Paulsen Properties, Ltd. for the construction of a new
home.  In April 2003, she obtained
financing for the construction through NCM, executing a Construction/Permanent
Loan Agreement (the ALoan
Agreement@),
a Promissory Note (the ANote@) in the amount of $202,800, and a Disbursement
Authorization form, which allowed NCM to disburse funds to Paulsen upon NCM=s receipt of either a written or verbal draw
request from Paulsen or Carolyn.

On September 12, 2003, Carolyn=s son, Murray Adams, met with Paulsen to discuss
the completion date of Carolyn=s house. 
During the conversation, Paulsen advised Murray that there had been some
delays but that he intended to personally supervise the job from that point
on.  Two days later, during a telephone
conversation with Paulsen, Murray claimed that Paulsen quit the job and told
Murray to contact a lawyer.  Paulsen, on
the other hand, claimed that he only told Murray that he was not going to complete
the job because Murray had threatened to kill him.








On September 15, 2003, Murray called NCM=s home office in Ohio and spoke with Charles
Dixon about Paulsen quitting the job. 
Dixon allegedly confirmed that there were no draws pending at that time
and that NCM would no longer honor Paulsen=s draw requests. 
Dixon also instructed Murray to have Carolyn contact NCM=s Southlake office and inform someone there that
Paulsen had quit the job.  The next
morning, Carolyn called the Southlake office and spoke with Bonnie Doran, the
district manager.  Carolyn informed Doran
that Paulsen had quit the job and that NCM should no longer honor Paulsen=s draw requests.

On September 17, 2003, Paulsen submitted a
request for disbursement to NCM in the amount of $33,320.  On September 18, 2003, Larry Bracken, Carolyn=s attorney, faxed a letter to Paulsen and to NCM=s Southlake office instructing NCM that no more
payments were to be made to Paulsen and requesting that Paulsen or another
builder complete the construction by October 14, 2003, or that other
accommodations be made.  On that same
day, NCM paid Paulsen the $33,320 he had requested the day before. 

Subsequently, Carolyn sued NCM for declaratory
relief, breach of contract, deceptive trade practices, conspiracy, common law
unreasonable collection efforts, and violation of the Texas Debt Collection
Practices Act (ATDCPA@).  NCM
filed a counter-claim for contractual indemnity.  At trial, the only claims against NCM
submitted to the jury were breach of contract and purported violations of the
TDCPA.








After a trial on the merits, the jury found
that:  (1) NCM did not breach the Loan
Agreement with Carolyn, (2) NCM did not violate the TDCPA, and (3) Carolyn was
not entitled to attorney=s
fees against NCM.  The jury also found
that a reasonable and necessary fee for the services of NCM=s attorneys was $174,500.








On March 7, 2008, NCM and Paulsen filed a joint
motion for entry of judgment consistent with the jury=s verdict. 
Thereafter, Carolyn filed a motion for judgment notwithstanding the
verdict (AJNOV@) and a response and objection to NCM and Paulsen=s motion for entry of judgment.  In her motion, Carolyn asserted ten grounds
on which the trial court should disregard the jury=s verdict and enter a take nothing judgment.  Of those ten grounds, only four were
applicable to NCM:  1) the jury=s answer to jury question number one[1]
should be disregarded because the answer Ayes@ was marked out and Ano@ was written beside it with scribbled initials;
2) the jury=s
answer to jury question number twenty[2]
should be disregarded because jury question number one was conflicting,
incomplete, and unresponsive; 3) the jury=s answer to jury question number twenty should be
disregarded because there was legally and factually insufficient evidence to
warrant the submission of question number twenty; and 4) the jury=s answers to jury questions one through twenty
should be disregarded because the trial court erroneously instructed the jury
concerning the dollar amount of Carolyn=s contractual damage claim; thereby, commenting
on the weight of the evidence.

On June 5, 2008, the trial court entered a
judgment that all parties take nothing by way of their claims, with court costs
to be taxed against Carolyn. One week later, the trial court entered an order
denying NCM and Paulsen=s
joint motion for entry of judgment. 
Subsequently, NCM filed a motion to alter, modify, or amend judgment,
arguing that, as a matter of law, NCM was entitled to recover all of its
attorneys=
fees.  NCM=s motion was overruled by operation of law.  See Tex. R. Civ. P. 329b(c).  This
appeal followed.

III.  Discussion








In its sole issue, NCM argues that the trial
court abused its discretion because the award of attorneys= fees to NCM was mandatory under the Loan
Agreement and Texas law.  In response,
Carolyn asserts that this court must affirm the trial court=s denial of attorneys= fees because NCM appeals from a JNOV and NCM
failed to challenge all the grounds upon which the trial court could have
entered a JNOV.  This case, however, is
procedurally awkward in that it does not fit within the traditional standard of
review for JNOV.[3]  

Here, NCM does not challenge the trial court=s setting aside of the jury verdict and entering
a judgment in conflict with that verdictCa challenge requiring this court to look at the
jury=s findings. 
Instead, NCM complains about the trial court=s failure to determine, as a matter of law, that
NCM was entitled to attorneys= feesCa legal issue, requiring no inquiry into the jury=s findings. 
See Holland v. Wal‑Mart Stores, 1 S.W.3d 91, 94 (Tex. 1999) (holding
that the determination of whether attorneys= fees are
available in a particular case is a question of law, which is reviewed by this
court under the de novo standard).  Thus, the JNOV standard is inapplicable.








A trial court=s determination of whether to award attorneys= fees is reviewed for abuse of discretion.  See Armstrong v. Steppes
Apartments, Ltd., 57 S.W.3d 37, 50 (Tex. App.CFort Worth 2001, pet. denied), cert. denied,
536 U.S. 951 (2002).  To determine
whether a trial court abused its discretion, we must decide whether the trial
court acted without reference to any guiding rules or principles; in other
words, we must decide whether the act was arbitrary or unreasonable.  Low v. Henry, 221 S.W.3d 609,
614 (Tex. 2007); Cire v. Cummings, 134 S.W.3d 835, 838B39 (Tex. 2004). 
A trial court has no discretion in determining what the law is or
applying the law to the facts.  Walker
v. Packer, 827 S.W.2d 833, 840 (Tex. 1992). 
A trial court=s
erroneous legal conclusion, even in an unsettled area of law, is an abuse of
discretion.  Perry v. Del Rio, 66
S.W.3d 239, 257 (Tex. 2001) (orig. proceeding); Huie v. DeShazo, 922
S.W.2d 920, 927B28
(Tex. 1996) (orig. proceeding). 

Generally, a party may not recover attorneys= fees unless such an award is authorized by
statute or contract.  Tony Gullo
Motors I, L.P. v. Chapa, 212 S.W.3d 299, 311 (Tex. 2006); GXG, Inc. v.
Texacal Oil & Gas, 977 S.W.2d 403, 424 (Tex. App.CCorpus Christi 1998, pet. denied).  NCM asserts that the Loan Agreement between
itself and Carolyn is a contract that contains language making the award of
attorneys=
fees to NCM mandatory.  The language at
issue provides:








(xvii)  That [NCM] will be
reimbursed for all expenses of any kind, including without limitation attorney=s fees, that may be incurred by [NCM] in connection with or arising
out of this agreement . . .[4]


 








       (xviii)        [CAROLYN] AGREES THAT [NCM] AND ITS
AGENTS AND ATTORNEYS WILL BE INDEMNIFIED AND HELD HARMLESS FROM ANY AND ALL
ACTIONS, CLAIMS, DEMANDS, DAMAGES, COSTS, EXPENSES, AND OTHER LIABILITIES,
INCLUDING WITHOUT LIMITATION ATTORNEY=S FEES, THAT
ANY SUCH PARTIES MAY INCUR OR THAT IN ANY WAY RELATE TO OR ARISE OUT OF THE
CONSTRUCTION OF THE IMPROVEMENTS, INCLUDING WITHOUT LIMITATION THOSE ARISING
OUT OF THE NEGLIGENCE OF [NCM].[5]
[Emphasis in original.]

 

When, as here, we construe a written contract, we
Aascertain the true intent of the parties as
expressed in the instrument.@  See
Nat=l
Union Fire Ins. Co. v. CBI Indus., Inc.,
907 S.W.2d 517, 520 (Tex. 1995).  In
deciding whether a contract is ambiguous, we consider the written instrument as
a whole and determine if it is subject to more than one reasonable
interpretation in light of the circumstances present at the time of its
formation.  Grain Dealers Mut. Ins.
Co. v. McKee, 943 S.W.2d 455, 458 (Tex. 1997).  If the contract can be given a certain or
definite legal meaning, it is not ambiguous and should be construed as a matter
of law.  Id.; CBI Indus.,
907 S.W.2d at 520. 








The provision of the Loan Agreement under (xviii)
is clearly one of indemnity, and neither party argues otherwise.  An indemnity agreement arises from a promise
by the indemnitor to safeguard or hold harmless the indemnitee against existing
or future loss, liability, or both.  See
Dresser Indus., Inc. v. Page Petroleum, Inc., 853 S.W.2d 505, 508 (Tex.
1993), rev=d
on other grounds, 853 S.W.2d
505 (Tex. 1993); Wallerstein v. Spirt, 8 S.W.3d 774, 779 (Tex. App.CAustin 1999, no pet.); Derr Constr. Co. v.
City of Houston, 846 S.W.2d 854, 858 (Tex. App.C Houston [14th Dist.] 1992, no writ).  Such is the plain intent of the quoted
language of the Loan Agreement.

That being said, a defining characteristic of an
indemnity agreement is that it Adoes not apply to claims between the parties to
the agreement.@
Wallerstein, 8 S.W.3d at 780 (citing Derr Constr., 846 S.W.2d at
858).  A[A] contract of indemnity does not relate to
liability claims between the parties to the agreement but, of necessity,
obligates the indemnitor to protect the indemnitee against liability claims of
persons not a party to the agreement.@  Dresser
Indus., Inc., 821 S.W.2d at 362B63.   








Thus, because both NCM and Carolyn are parties to
the indemnity agreement, the agreement, as a matter of law, does not obligate
Carolyn to pay NCM its attorneys= fees incurred in defending itself against
Carolyn=s claims and in prosecuting its counterclaim
against Carolyn.  See MRO Southwest,
Inc. v. Target Corp., 2007 WL 4403912, at *3 (Tex. App.CSan Antonio Dec.19, 2007, pet. denied) (mem. op.,
not designated for publication) (holding defendant could not recover attorneys= fees incurred in defending the suit based on
indemnity provision because the provision did not apply to claims between the
parties to the agreement); see also Baird v. Lease Acquisition Partners,
Inc., No. 03-99-00773-CV, 2000 WL 1508263, at *4 (Tex. App.CAustin Oct. 12, 2000, no pet.) (not designated
for publication) (concluding the same based on similar indemnity
provision).  Consequently, the trial
court did not abuse its discretion by refusing to award NCM its attorneys= fees under the Loan Agreement and Texas
law.  Accordingly, we overrule NCM=s sole issue.

IV.  Conclusion

Having overruled NCM=s sole issue, we affirm the trial court=s judgment.

 

 

            

BOB MCCOY

JUSTICE

                                                                                                        

PANEL: 
LIVINGSTON and MCCOY, JJ.

 

DELIVERED: March 25, 2010

 











[1]Jury question number one asked, ADid [NCM] fail to comply with terms
of the Construction/Permanent Loan Agreement?@ 





[2]Jury question number twenty asked, AWhat is a reasonable fee for the
necessary services of [NCM=s] attorneys in this case, stated in dollars and cents?@





[3]A trial court may disregard a jury verdict and render judgment
notwithstanding the verdict (AJNOV@) if no evidence supports the jury=s findings on
issues necessary to liability or if a directed verdict would have been
proper.  See Tex. R. Civ. P. 301; Tiller v. McLure, 121 S.W.3d 709, 713 (Tex.
2003); Fort Bend County Drainage Dist. v. Sbrusch, 818 S.W.2d 392, 394
(Tex. 1991).  In determining whether the
trial court erred by rendering a JNOV, we view the evidence in the light most
favorable to the verdict under the well-settled standards that govern legal
sufficiency review.  See Wal-Mart
Stores, Inc. v. Miller, 102 S.W.3d 706, 709 (Tex. 2003). 





[4]Although the record reflects that
NCM used language from this reimbursement provision in its petition, NCM did
not plead reimbursement of its attorneys= fees but, instead, pleaded contractual indemnity.  Specifically, NCM pleaded 

 

COUNT 1-CONTRACTUAL INDEMNITY

 

9. 
NCM incorporates paragraphs 1 through 8 as is set forth herein fully
verbatim. [Paragraphs 1 through 8 set forth the factual and procedural
background of the case.]

 

10. 
Adams agreed to indemnify and hold NCM harmless from any and all claims
arising out of the Loan Agreement.  The
claims which are the subject matter of this lawsuit arise out of the Loan
Agreement.  NCM has been forced to incur
attorney[s=] fees, costs, and other expenses
to defend this lawsuit.

 

11. 
Adams=s conduct has, therefore,
proximately caused damage to NCM in an amount in excess of the minimum
jurisdictional limit of the Court.

 

NCM
concluded by asking the trial court to enter a judgment in its favor for, among
other things, reasonable and necessary attorneys= fees.  Because NCM pleaded only contractual
indemnity for its attorneys= fees, it is not entitled to an award of attorneys= fees under the Loan Agreement=s reimbursement provision.  See Smith v. Deneve, 285 S.W.3d 904,
916 (Tex. App.CDallas 2009, no pet.) (A[W]hen a party pleads a specific
ground for recovery of attorney=s fees, the party is limited to that ground and cannot
recover attorney=s fees on another, unpleaded
ground.@).





[5]For convenience, we have
substituted ANCM@ for ALender@ and ACarolyn@ for ABorrower@ in the quoted version of the Loan
Agreement=s provision.