**Reversed and Rendered and Majority and Dissenting Opinions filed August 9, 2012.**



In The

# Fourteenth Court of Appeals

### NO. 14-10-00708-CV

## THE PORT OF HOUSTON AUTHORITY OF HARRIS COUNTY, TEXAS
**Appellant**

**V.**

## ZACHRY CONSTRUCTION CORPORATION, Appellee

### On Appeal from the 151st District Court
### Harris County, Texas
### Trial Court Cause No. 2006-72970

## DISSENTING OPINION

I respectfully dissent from Part B of the majority's opinion, in which liquidated damages are addressed. In my opinion, the documents titled "Partial Release of Lien" do not release Zachry's claim for the wrongfully withheld liquidated damages. I would uphold the trial court's decision that the documents are ambiguous and the jury's decision that Zachry did not release those damages.

The majority concludes that the documents at issue are unambiguous. I disagree. Applying the following rules of construction, I would hold that, at most, the documents

are ambiguous and that the issue was properly submitted to the jury. I would consider what a release is, how to construe it, and the special provisions related to releases.

## A. Rules of Construction

### 1. *A release extinguishes a claim or cause of action.*

A release is a writing providing that a duty or obligation owed to one party to the release is discharged immediately or on the occurrence of a condition. *See Nat'l Union Fire Ins. Co. of Pittsburg, Pa. v. Ins. Co. of N. Am.*, 955 S.W.2d 120, 127 (Tex. App.—Houston [14th Dist.] 1997), *aff'd sub nom. Keck, Mahin & Cate v. Nat'l Fire Ins. Co.*, 20 S.W.3d 692 (Tex. 2000); RESTATEMENT (SECOND) OF CONTRACTS § 284 (1981). A release of a claim or cause of action extinguishes the claim or cause of action. *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993).

### 2. *A release is subject to the rules governing contract construction.*

Under Texas law, a release is a contract and is subject to the rules governing contract construction. *See Williams v. Glash*, 789 S.W.2d 261, 264 (Tex. 1990) (holding that a release is a contract subject to avoidance on same grounds as any other contract); *Loy v. Kuykendall*, 347 S.W.2d 726, 728 (Tex. Civ. App.—San Antonio 1961, writ ref'd n.r.e.) (treating a release as a contract subject to rules governing construction thereof); RESTATEMENT (SECOND) OF CONTRACTS § 284 cmt. c.

#### a. The primary concern is to ascertain the true intent of the parties.

In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983); *Nat'l Union*, 955 S.W.2d at 127. The intention of the parties is discovered primarily by reference to the words used in the contract. *Nat'l Union*, 955 S.W.2d at 127. To determine the parties' intentions, courts should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *Coker*, 650 S.W.2d at 393; *Nat'l*

2

*Union*, 955 S.W.2d at 127. No single provision taken alone will be given controlling effect; rather, all of the provisions must be considered with reference to the entire contract. *Id.*

### b. The court may consider surrounding circumstances.

Evidence of circumstances surrounding the execution of the contract may be considered in the construction of an unambiguous instrument, even though oral statements of the parties' intentions are inadmissible to vary or contradict the terms of the agreement. *Med. Towers, Ltd. v. St. Luke's Episcopal Hosp.*, 750 S.W.2d 820, 823 (Tex. App.—Houston [14th Dist.] 1988, writ denied) (citing *Sun Oil Co. (Delaware) v. Madeley*, 626 S.W.2d 726, 731 (Tex. 1982)). The circumstances help to illuminate the contractual language chosen by the parties and enable evaluation of "'the objects and purposes intended to be accomplished by them in entering into the contract.'" *Id.* (quoting *Garcia v. King*, 139 Tex. 578, 585, 164 S.W.2d 509, 512 (1942)). A contract should be construed by determining how the "reasonable person" would have used and understood such language, considering the circumstances surrounding its negotiation and keeping in mind the purposes intended to be accomplished by the parties when entering into the contract. *Nat'l Union*, 955 S.W. 2d at 128 (citing *Manzo v. Ford*, 731 S.W.2d 673, 676 (Tex. App.—Houston [14th Dist.] 1987, no writ)).

### c. The court may consider other contracts pertaining to the same transaction.

Instruments pertaining to the same transaction should be read together to ascertain the parties' intent as to the meaning of the release, even if the parties executed them at different times and the instruments do not expressly refer to each other. *See Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex. 2000); *In re Sterling Chems., Inc.*, 261 S.W.3d 805, 810 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *Dorsett v. Cross*, 106 S.W.3d 213, 217 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).

3

**d.      The court may consider deletions made by the parties.**

We may also consider "the deletions made by the parties" in the course of drafting the instrument at issue.  *See Hous. Exploration Co. v Wellington Underwriting Agencies, Ltd.*, 352 S.W.3d 462, 470–71 (Tex. 2011); *Hous. Pipe Line Co. v. Dwyer*, 374 S.W.2d 662, 664 (Tex. 1964).

**e.      The court may consider the document's title.**

We may consider the title of the document.  *Enter. Leasing Co. of Hous. v. Barrios*, 156 S.W.3d 547, 549 (Tex. 2004) (per curiam) ("Although we recognize that in certain cases, courts may consider the title of a contract provision or section to interpret a contract, 'the greater weight must be given to the operative contractual clauses of the agreement.'" (quoting *Neece v. A.A.A. Realty Co.*, 322 S.W.2d 597, 600 (Tex. 1959))). The title also can create ambiguity when it differs from the body.  *See Lone Star Cement Corp. v Fair*, 467 S.W.2d 402, 404–05 (Tex. 1971) (when caption of a judicial order dismisses only one party while the body purports to dismiss an entire cause, the order is ambiguous); *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 138 n.3 (Tex. 1994) (title of insurance contract that is repugnant or misleading as to coverage creates an ambiguity).

**f.      The court may not rewrite a contract or add to its language.**

A court should not rewrite a contract or add to its language.  *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 162 (Tex. 2003); *White Oak Operating Co. v. BLR Constr. Cos.*,  362 S.W.3d 725, 733 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

***3.      Specific rules apply to releases.***

In addition to these basic contract construction rules, however, we must take into account the rules that specifically apply to releases.

###### a. A release must specifically mention the claim to be released.

To effectively release a claim in Texas, the releasing instrument must mention the claim to be released. *See Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 938 (Tex. 1991).

###### b. General releases are to be narrowly construed.

General, categorical releases are to be narrowly construed. *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 422 (Tex. 1984). *See also Victoria Bank*, 811 S.W.2d at 938 (applying this principle in limiting the scope of release so that "any claims not *clearly* within the subject matter of the release are not discharged") (emphasis added); *Baty v. ProTech Ins. Agency*, 63 S.W.3d 841, 850 n.7 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (collecting cases in which the scope of a general release was narrowly construed).

###### c. Typical release language provides that the parties "release, discharge, and relinquish" claims.

Typical release language is "release, discharge, relinquish." *Derr Constr. Co. v. City of Hous.*, 846 S.W.2d 854, 859 (Tex. App.—Houston [14th Dist.] 1992, no writ). *See also Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 387 (Tex. 1997) (contract language that "Contractor shall not be liable to the Subcontractor for delay to Subcontractor's work by the act, neglect or default of Owner" is not a release because it does not extinguish a claim or establish an absolute bar to any right of action on the released matter).

## B. Application of the Rules to the Documents at Issue

### 1. There is little evidence about the parties' intent and surrounding circumstances.

There was very little testimony at trial about the Partial Release of Liens. As to the intent of the parties and the surrounding circumstances, we know only the following: Zachry initially signed a document ("Release Form No. 1") containing broad release language in the body of the document. *See* majority opinion, *ante* at 21. Beginning in

5

September of 2004, Zachry revised the release agreement, leaving only two paragraphs in the body of the document and deleting the broad release language ("Release Form No. 2").[1] In 2007, after all of the liquidated damages had already been withheld, the Port rejected an invoice from Zachry with the note, "not accepted at this time without proper release of lien form." The lawyers for Zachry and the Port then got together and came up with an acceptable release form, which once again included the broad release language with a carve-out for all claims in this lawsuit ("Release Form No. 3"). *See* majority opinion, *ante* at 22. The Port's witness, Andy Thiess, called the documents "releases" but claimed that he did not know their legal effect. Zachry's witness Jean Abiassi claimed that the releases were only releases of liens, as could be seen by the titles of the documents and section 6.07 of the contract.

## 2. *The releases refer to other documents.*

The jury was asked to decide whether certain numbered documents released the liquidated-damages claim. Each release refers to another document, and to understand what was being released, it was necessary to know the contents of the referenced document. But, the record contains no testimony matching a release and the document to which it refers. The jury received no charge instructions about how to match a release with the document to which it refers, and the referenced documents are not attached to the exhibits in the record. The absence of evidence from which to identify the document referenced in a given release is itself a sufficient basis on which to conclude that the Port has failed to prove anything as a matter of law. While the majority contends that Zachry failed to make these arguments, it is the Port's burden to show exactly what the "releases" released, in order to prevail on its point of error. The evidence presented at trial does not support the Port's claim as to what was released. To illustrate why this is so, I will address the specific releases at issue.

---

[1] Although I do not think that Release Form No. 2 should be called a release at all, I will refer to it as a release as the majority has done.

### a.       Release No. 23

I begin by examining the release cited by the majority as an example.  Release No. 23 provides as follows:

> ZCC hereby acknowledges and certifies that Port of Houston Authority (PHA) has made partial payment to ZCC on all sums owing on Payment Estimate Number Twenty-[T]hree (23) and that it has no further claims against PHA for the portion of the Work completed and listed on the Schedule of Costs in Payment Number Twenty-[T]hree (23).

This release was signed May 17, 2006.

The majority contends that the language "it has no further claims against PHA" is a release.  *See* majority opinion, *ante* at 20.  But what exactly has been released?  The agreement identifies such claims only as the claims "for the portion of the Work completed and listed on the Schedule of Costs in Payment Estimate Number Twenty-Three (23)."  In order to know what was released you must refer to the Schedule of Costs in Payment Estimate Number Twenty-Three.

In the charge, the trial court instructed the jury, "you must decide the meaning of DX1114.012 and PX884.0159 (re Payment estimate 23) . . . ."  As the majority notes, the Payment estimate and schedule of costs were to be prepared by Zachry under the contract.  The referenced numbers in the jury charge refer to different copies of the same document.  The documents that follow these exhibit numbers differ from one another.  DX1114 is a 14-page document starting with DX1114.001 and ending at DX1114.014.  It does not include "Payment Estimate Number Twenty-[T]hree (23)."  PX884 is a 307-page document, starting with PX884.0001 and ending with PX884.0307.  It also does not include "Payment Estimate Number Twenty-[T]hree (23)."  It instead includes three copies of Payment Estimate Number Twenty-Two, and then jumps to Payment Estimate Number Twenty-Four.

There is one document, PX884.0145, that *might* be Payment Estimate Number Twenty-Three.  Although the first page states "Estimate 22," the second page states

"Estimate 23." Without knowing exactly what document is referenced in the release, how could that release be unambiguous?

That Estimate contains both typed and handwritten notations. There was no testimony as to who prepared the handwritten notations, or when those notations were made, or whether those notations were communicated to Zachry. The typed document has a stated date of March 25, 2006. At the bottom of the page there is a typed reference to "LIQ. DAMAGES (C + M)" and the number $0.00 is typed in. "C" is listed above as "Previous Liquidated Damages" with a "$0.00" notation. "M" is listed as "Liquidated Damages this period" and the typed "$0.00" is crossed out and the number "820,000" has been written by hand. The document appears to contain the signature of Andy Thiess for the Port and the handwritten date of April 17, 2006. At the bottom of the last page of that estimate there is a handwritten notation "-(820,000) Feb. + March LD's."

The majority puts together a letter written by the Port dated May 10, 2006[2] and Release No. 23 to somehow link the liquidated-damages deduction with the release. But, the release in question does not mention this letter at all, and the letter itself does not refer to Payment Estimate Number Twenty-Three. The notation at the bottom can hardly be considered an unambiguous description of the Port's liquidated-damages claim, especially without any testimony that this was even sent to Zachry. Again, this can only raise an ambiguity that the jury resolved against the Port.

b.      Release No. 24

Release No. 24, signed June 7, 2006, suffers from some of the same problems. The jury was told to decide the meaning of "DX1115.017 and PX884.0168 (re Payment Estimate 24)." DX1115 does not contain Payment Estimate Number 24. PX884 appears to contain Payment Estimate 24, but at page 884.0154. That Estimate contains both typed and handwritten notations. There was no testimony as to who prepared the

_____

[2] While the majority in footnote 10 contends that other versions of the release may violate the parol evidence rule, they somehow consider this letter as affirmative evidence as to what was released.

8

handwritten notations, when those notations were made, or whether those notations were communicated to Zachry. The top of the typed document has a stated date of April 10, 2006. At the bottom of the page there is a typed reference to "LIQ. DAMAGES (C + M)" and the number "$0.00" is typed in. The typed number has been crossed out and the number 600,000[3] is handwritten above it. The "C" line above for previous liquidated damages has the typed amount "$0.00," but on the "M" line, the typed amount "$0.00" has been crossed out and replaced with the handwritten figure, "820,000." The document appears to contain the signature of Andy Thiess for the Port and the handwritten date of May 10, 2006.

All of the remaining releases suffer from the same problems. For the releases that contained handwritten notations, there was no testimony as to who prepared the handwritten notations, when those notations were made, or whether those notations were communicated to Zachry. Each release listed below was in the jury charge but did not have the appropriate payment estimate attached, and there was no testimony that the documents that I am referencing below were in fact the appropriate payment estimate.

### c.      Release No. 25, dated July 24, 2006

Release No. 25 refers to Payment Estimate No. 25, which I will assume is PX884.0163. It was prepared June 7, 2006 and apparently approved by Thiess on June 16, 2006. The first page contains the typed notation "LIQ. DAMAGES (C + M)  $0.00." Both the "C" line and the "M" line above contain the typed amount "$0.00." These were not crossed out.

### d.      Release No. 26, dated August 21, 2006

Release No. 26 refers to Payment Estimate No. 26, which I will assume is PX884.0172. It was prepared July 24, 2006. It does not show an approval date by Thiess. The first page contains the typed notation "LIQ. DAMAGES (C + M)  $0.00."

---

[3] This number does not match the majority's chart.

Both the "C" line and the "M" line above contain the typed number "$0.00." These were not crossed out.

###      e.      Release No. 27, dated September 22, 2006

Release No. 27 refers to Payment Estimate No. 27, which I will assume is PX884.0180. It was prepared August 21, 2006. It was apparently approved by Thiess on October 9, 2006. The first page contains the typed notation "LIQ. DAMAGES (C + M) $0.00." Both the "C" line and the "M" line above contain the typed number "$0.00." These were not crossed out individually, although a line is drawn through the entire summary.

###      f.      Release No. 28, dated October 23, 2006

Release No. 28 refers to Payment Estimate No. 28, which I will assume is PX884.0188. It was prepared September 22, 2006. It apparently was approved by Thiess on October 9, 2006. The first page contains the typed notation "LIQ. DAMAGES (C + M)  $0.00." The "$0.00" has been crossed out and the number 2,585,291.80[4] has been written by hand. The "C" line contains the typed number figure "$0.00," which is not crossed out, but the number 2,175,291.80 has been handwritten next to it. The "M" line contains the figure "$0.00," which has been crossed out and the number 410,000[5] has been written by hand.

###      g.      Release No. 29, dated November 20, 2006

Release No. 29 refers to Payment Estimate No. 29, which I will assume is PX884.0197. It was prepared October 23, 2006. It shows no approval by Thiess. The first page contains the typed notation "LIQ. DAMAGES (C + M)  $0.00." Both the "C"

---

[4] This number does not match what the Port claimed were the withheld liquidated damages and does not match the majority's chart as to when the liquidated damages were actually deducted from Zachry's payments.

[5] This number does not match the chart by the majority.

line and the "M" line above contain the typed number "$0.00." These were not crossed out.

### h. Release No. 30, dated December 15, 2006

Release No. 30 refers to Payment Estimate No. 30, which I will assume is PX884.0207. It was prepared November 20, 2006. It apparently was approved by Thiess on November 30, 2006. The first page contains the typed notation "LIQ. DAMAGES (C + M)  $0.00." The "$0.00" has been crossed out and the number 155,000 has been written by hand. The "C" line contains the typed figure "$0.00," which is not crossed out, while the "M" line contains the typed number "$0.00" with a handwritten number of 155,000 inserted.

### i. Release No. 31, dated January 31, 2007

Release No. 31 refers to Payment Estimate No. 31, which I will assume is PX884.0217. It was prepared December 15, 2006. It apparently was approved by Thiess on January 1, 2007. The first page contains the typed notation "LIQ. DAMAGES (C + M)  $0.00." This is not crossed out. The "C" line above contains the typed amount "$0.00," and it has not been crossed out. The "M" line contains the typed amount "$0.00," but that has been crossed out and the handwritten number 150,000 inserted.

It appears that every time Zachry sent its payment estimate, it listed "$0.00" in the blank for liquidated damages. On this record, we do not know whether the referenced payment estimate that was listed in the release was Zachry's estimate—with zero liquidated damages—or the Port's estimates with its handwritten notations. On this record, the Port cannot prevail as a matter of law.

If the handwritten notations were made by Port personnel to refer to the liquidated damages in question here, then the Port was very inconsistent in its treatment of the liquidated damages. On some documents, the Port approved a listing of "$0.00" on Line "C" for "previous liquidated damages," even though the Port had withheld previous

11

liquidated damages. Because the documents do not conclusively establish that a release occurred, I would not hold that a release occurred as a matter of law.

The majority's chart also cannot be supported by the actual releases themselves. Assuming that the handwritten notations indicated a liquidated-damages deduction, those handwritten numbers do not match the amounts that the majority believes were the actual deductions from Zachry's invoices.

Finally, even assuming that the document included a reference to the Port's handwritten notations, the actual release says it has no further claims with respect to the *Schedule of Costs* in the Payment Estimate—in other words, that Zachry has no further claim that the work done cost any more than was listed in its Schedule of Costs for the work done that month. Zachry cannot later contend that the work cost more than listed on the Schedule. The release does not say that Zachry is to be bound by any summary or deductions made by the Port, or that Zachry agrees that the deductions made by the Port are correct. Thus, the releases violate the fundamental rule that they must mention the claim to be released—it is simply missing from the evidence at trial. Under this evidence, we do not know what amount, if any, was allegedly released. While the majority contends that the release does not have to identify the amount released, how else could the majority conclude that a release of $2.205 million occurred as a matter of law?

### 3.    *Section 6.07 of the contract supports a release of liens only.*

Both sides cite to the contract to support their claims. Section 6.07 of the contract states in pertinent part as follows:

> As a condition precedent to the obligation of the Port Authority to make payment on any invoice, the Contractor shall supply the Port Authority with waivers and releases of liens (including without limitation all mechanics' and materialmens' liens and any other type of security interest), which waivers and releases shall be duly executed and acknowledged by the Contractor and each Subcontractor and Supplier expecting payment from [the] Contractor in respect of such invoice in order to assure an effective release of such liens to the maximum extent permitted

12

by Applicable Law. The waivers and releases of liens shall provide, at a minimum, that all amounts due and payable to the Contractor and each such Subcontractor and Supplier, as of the date of such invoice and as of the date of the last payment received by the Contractor and each such Subcontractor and Supplier have been paid in full and that the Contractor and each such Subcontractor and Supplier waives, releases and relinquishes any lien (including without limitation any mechanic's or materialman's lien), security interest and claim for payment to the extent set out the preceding sentence.

I agree with Zachry's interpretation of this section that the two sentences show an intent to release liens and not a release of a claim that payment had been made in full. The second sentence limits the release to the preceding sentence which is clearly limited to liens. Even the majority concedes that this section only required Zachry to release a lien. *See* majority opinion, *ante* at 23. But then the majority uses that against Zachry when it discusses the title of the release forms, noting that Release Form No. 1 was a broad release yet was titled "Partial Release of Lien." Section 6.07 shows the parties' intent to release *liens* in connection with this Release Form No. 2.

### 4. The titles and deletions in the various forms show a limited release.

The different forms of the release show an intent by Zachry to provide a very limited release. The deletion of the broad-form release language that was present in Release Form No. 1 shows Zachry's intent to limit its release. The fact that the Port was ultimately unhappy with Release Form No. 2 indicates that the Port knew that this release did not provide them any protection at all. *See Hous. Exploration Co.*, 352 S.W.3d at 470–71 (deletions in a contract can be considered in its construction). While not controlling, a document's title also can create ambiguity. *See Lone Star Cement Corp.*, 467 S.W.2d at 404–05. Here, however, the titles of the documents match up with the contract provision calling only for a release of lien.

### 5. This release violates the general rules of construction for a release.

Under general rules of contract construction, this release is, at most, ambiguous. But when the specific rules of construction concerning releases are incorporated into the

13

analysis, the release fails. To effectively release a claim in Texas, the releasing instrument must mention the claim to be released. *See Victoria Bank*, 811 S.W.2d at 938. The releases here do not do this. Releases must be construed narrowly, *see id.*, yet here, the majority expands the releases' meaning. And unlike typical releases, the releases in this case do not use language that the parties "release, discharge, [and] relinquish" their claims. *Cf. Derr Constr. Co.*, 846 S.W.2d at 859 ("Release language is generally 'release, discharge, relinquish.'"); *MG Bldg. Materials, Ltd. v. Moses Lopez Custom Homes, Inc.*, 179 S.W.3d 51, 64 (Tex. App.—San Antonio 2005, pet. denied) (same); *Wallerstein v. Spirt*, 8 S.W.3d 774, 780 (Tex. App.—Austin 1999, no pet.) (same). Despite footnote 9, the majority is unable to cite any majority opinion in which the court construed a document to be a release where the document lacked such typical release language. *See also Green Int'l*, 951 S.W.2d at 387 (contract language that "Contractor shall not be liable to the Subcontractor for delay to Subcontractor's work by the act, neglect or default of Owner" is not a release because it neither extinguishes a claim nor establishes an absolute bar to any right of action on the released matter).

For all of these reasons I respectfully dissent from the majority's opinion as to the release of the liquidated damages claim.


/s/     Tracy Christopher
        Justice



Panel consists of Justices Boyce, Christopher, and McCally (McCally, J., majority).


14