# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00267-CV

**Daisy Wanda Garcia, Appellant**

**v.**

**Thomas Lee Baumgarten, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT
## NO. D-1-GN-12-002429, HONORABLE CHARLES R. RAMSAY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This is an appeal from a summary judgment rendered on a claim for breach of a settlement agreement resolving an ownership dispute over real property. The principal issue on appeal requires a determination of appellant Daisy Wanda Garcia's contractual obligations under that agreement, but Garcia also raises issues challenging the district court's award of attorney fees. For the reasons set forth below, we will modify the summary judgment and, as modified, affirm.

## Background

In 1979, Garcia and appellee Thomas Lee Baumgarten bought a house on Exposition Boulevard in Austin, Texas. They lived there together until their relationship ended—sometime in late 1980 or early 1981—and Baumgarten moved to Houston.

More than thirty years later, in November 2011, Garcia's lawyer sent Baumgarten a letter demanding that he sign a warranty deed conveying his interest in the Exposition property to Garcia or she would file a suit "to clear up title" to that property. In response, Baumgarten filed the

underlying suit seeking declaratory judgment that he and Garcia are joint owners of the property and requesting a partition by sale. Garcia asserted several affirmative defenses in response, including adverse possession, limitations, fraud, and equitable estoppel, all of which the district court disposed of in two partial summary judgments. Before the case went to trial on Baumgarten's claims, the parties executed a settlement agreement—the subject of this appeal—that purported to resolve all claims regarding the Exposition property.

Under the terms of the settlement agreement, Garcia agreed to purchase Baumgarten's one-half interest in the Exposition property by paying him at least $328,000, but not more than $337,500, using funds she was to procure from a reverse mortgage on the Exposition property as follows:

> Garcia agrees to pay Baumgarten the highest amount possible from loan proceeds she will obtain under a reverse mortgage on the Property, not to exceed $337,500, but in any event no less than $328,000, to purchase Baumgarten's ownership interest in the Exposition Blvd. Property. ("Baumgarten's ½ Interest"). If Garcia obtains a reverse mortgage in excess of $337,500, anything above $337,500 may be used for her own use. Garcia agrees to proceed diligently in obtaining a reverse mortgage in the amount of $337,500, but not less than $328,000 . . . .

In return, Baumgarten agreed to execute (and deliver as required) a quitclaim deed conveying his ownership interest in the property to Garcia. Both also agreed, of course, to release all claims related to the property and underlying lawsuit.

Baumgarten acknowledges that after they signed the settlement agreement, Garcia "proceed[ed] diligently in obtaining a reverse mortgage" and was, in fact, able to qualify for a reverse mortgage—but for only $267,235, which was less than the $328,000 minimum established in the settlement agreement. The low mortgage amount was a result of the appraisal on

2

the Exposition property, which Garcia insists was at least $115,000 lower than the parties had assumed it would be. The terms of the agreement did not obligate Garcia to enter into a reverse mortgage that paid less than $328,000, and she did not do so. However, the agreement does include a provision specifying that "if Garcia is unable to obtain a reverse mortgage," Baumgarten would not deed the property to her, and instead Garcia must "vacate the Property" so that the parties can "sell the Property" and "split[] the sales proceeds and costs evenly." Garcia did not vacate the property.

After sending Garcia a demand that she vacate the Exposition property according to the terms of the settlement agreement, Baumgarten amended his petition in the underlying lawsuit to add a claim for breach of the settlement agreement. Soon thereafter, he filed a motion for summary judgment on the breach claim, submitting evidence that Garcia had not been able to obtain a reverse mortgage as contemplated by the settlement agreement and that she had not vacated the property as prescribed by the settlement agreement. The district court granted Baumgarten's motion and in its judgment, which disposed of all parties and all remaining claims, ordered Garcia to vacate the property so that it could be sold according to the terms of the settlement agreement. The district court also awarded Baumgarten attorney fees of $42,240, costs of $5,615.04, and various appellate fees, and included in its judgment an order that the attorney fees and costs be paid out of Garcia's share of the proceeds from the sale of the Exposition property. This appeal ensued.

**Breach of the settlement agreement**

In her first issue, Garcia challenges the district court's summary judgment on Baumgarten's breach claim.[1] Specifically, she asserts that summary judgment was improper because

---

[1] The rules and standard of review for summary judgments are well known and need not be restated here. *See* Tex. R. Civ. P. 166a; *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661

3

the evidence shows that she fully complied with the terms of the parties' settlement agreement and that the settlement agreement is unenforceable under the doctrines of impossibility of performance and mutual mistake. *See Nixon v. Mr. Prop. Mgmt. Co., Inc.*, 690 S.W.2d 546, 550–51 (Tex. 1985) (non-movant avoids summary judgment by raising fact issue on at least one element of movant's claim); *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984) (non-movant avoids summary judgment by raising fact issue on each element of own affirmative defense).

### Breach

In support of her argument that she complied with the terms of the settlement agreement, Garcia begins by emphasizing that her only obligations under the settlement agreement were "to proceed diligently in obtaining a mortgage in the amount of $337,500, but not less than $328,000" and to "promptly complete all counseling and similar requirements that may be necessary and execute all documents reasonably promptly that may be necessary to obtain such a mortgage." The agreement did not, Garcia continues her argument, obligate her to pay Baumgarten $328,000 (or any other amount) unless she was able to obtain that amount through a reverse mortgage. Therefore, Garcia concludes, because the undisputed summary-judgment evidence established that she diligently proceeded to obtain a reverse mortgage, but was not able to obtain one paying at least $328,000, Baumgarten failed to establish that she breached the agreement, and summary judgment was improper. *See Greene v. Farmers Ins. Exch.*, 446 S.W.3d 761, 765 (Tex. 2014) ("'Breach' of a contract occurs when a party fails to perform an act that it has contractually promised to perform." (citing *Black's Law Dictionary* 225 (10th ed. 2014)); *Nixon*, 690 S.W.2d at 550–51

_____

(Tex. 2005); *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000) (per curiam).

4

(summary judgment improper where non-movant raised fact issue as to element of movant's claim). We disagree.

At the outset, we must first frame Garcia's issue properly. As Garcia acknowledges, there are no disputed fact issues regarding her conduct in connection with the settlement agreement—i.e., despite a diligent effort, Garcia was not able to obtain a reverse mortgage paying at least $328,000, she did not enter into a reverse mortgage, and she did not vacate the property within 60 days. There is dispute, however, about the extent of her obligations under the agreement—i.e., what additional conduct, if any, was required of Garcia beyond attempting to obtain a sufficient reverse mortgage. Thus, rather than an evidentiary question, our true issue on appeal involves a matter of contract construction—specifically whether, as the district court necessarily determined, the following provision required Garcia to vacate the property once she was unable to obtain a reverse mortgage paying at least $328,000:

> "Notwithstanding any of the foregoing, if Garcia is unable to obtain a reverse mortgage within 90 days . . . , Baumgarten and Garcia agree that Garcia will vacate the Property within 60 days thereafter, and the parties will list the Property for sale . . . ."

*See Lafarge Corp. v. Wolff, Inc.*, 977 S.W.2d 181, 186 (Tex. App.—Austin 1998, pet. denied) (conduct required by parties under contract is question of law determined by court; any dispute concerning failure of party to comply with that conduct is fact question); *see also X Techs., Inc. v. Marvin Test Sys., Inc.*, 719 F .3d 406, 413–14 (5th Cir. 2013) ("'Whether a party has breached a contract is a question of law for the court. The Court determines what conduct is required by

5

the parties.'") (quoting *Meek v. Bishop Peterson & Sharp, P.C.*, 919 S.W.2d 805, 807 (Tex. App.—Houston [14th Dist.] 1996, writ denied) ( internal citations omitted))).[2]

Garcia maintains that the provision beginning, "Notwithstanding any of the foregoing, if Garcia is unable to obtain a reverse mortgage," does nothing more than ensure or reemphasize her diligence in seeking the reverse mortgage. Thus, by "being diligent in qualifying for a reverse mortgage loan within 36 days," she claims that she "did in fact obtain a reverse mortgage" and that this final provision was not triggered. But there is simply no reasonable way to construe from the undisputed facts before us that Garcia "did in fact obtain a reverse mortgage." "Obtain" means "[t]o succeed in gaining possession of as the result of planning or endeavor; acquire." *American Heritage Dictionary of the English Language* 1217 (5th ed. 2011). And as shown in the following examples, when considered in context and with reference to the reverse mortgage considered in the agreement, it is clear that "obtain" means actually acquiring and entering into the reverse mortgage such that the loan proceeds are paid out:

---

[2] As with all matters of contract interpretation, we begin our analysis with the legal question of the settlement agreement's ambiguity. *See Dynegy Midstream Servs., Ltd. P'ship v. Apache Corp.*, 294 S.W.3d 164, 168 (Tex. 2009) (ambiguity is question of law). If we can give it a clear and definite legal meaning or interpretation, then the settlement agreement is not ambiguous and we construe it as a matter of law. *See Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 133 (Tex. 2010); *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). A contract is ambiguous if its meaning is doubtful or uncertain or is reasonably susceptible to more than one meaning. *See Dynegy*, 294 S.W.3d at 168; *Coker*, 650 S.W.2d at 393. Our primary concern in construing a written contract is to "ascertain the true intentions of the parties as expressed in the instrument." *Coker*, 650 S.W.2d at 393. "To achieve this objective, courts should examine and consider *the entire writing* in an effort to harmonize and give effect to *all the provisions* of the contract so that none will be rendered meaningless." *Id.* "No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument." *Id.* Further, we "construe contracts from a utilitarian standpoint bearing in mind the particular business activity sought to be served." *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005) (per curiam) (quoting *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex.1987)).

- "If Garcia obtains a reverse mortgage in excess of $337,550, anything over $337,500 may be used for her own use."

- "All of the reverse mortgage proceeds obtained by Garcia as described above shall be paid . . . ."

The fact that Garcia tried diligently to get a reverse mortgage within the contract parameters and the fact that she qualified for a mortgage that paid less than the contract contemplated, but did not actually enter into that mortgage, do not mean that she "obtain[ed] a reverse mortgage."

We likewise find no merit in Garcia's suggestion that the phrase, "If Garcia is unable to obtain a reverse mortgage," is equivalent to, "If Garcia [did not diligently seek] a reverse mortgage," and is simply meant to reemphasize her previously established obligation to use her best efforts in obtaining the reverse mortgage. Nothing in the text of this provision invokes or refers to that obligation, stated two pages before, "to proceed diligently in obtaining a reverse mortgage," and in fact, the language immediately preceding this phrase—"notwithstanding any of the foregoing"—suggests the opposite. *See Black's Law Dictionary* at 1231 (defining "notwithstanding" as "despite; in spite of"). But in any event, as Garcia herself notes, the settlement agreement already explicitly obligates her "to proceed diligently in obtaining a reverse mortgage," so there would be no purpose in reasserting that obligation here. There is certainly no need to do so vaguely.

We also reject her counsel's suggestion, made at oral argument, that we read this phrase literally to mean that Garcia was only required to vacate the property if it was not at all possible for her to acquire a reverse mortgage of any amount or kind, even a reverse mortgage paying $2. While it may find some tenuous (or strained) support in the text, this interpretation would render the provision essentially meaningless given that, under the facts presented here, it was effectively impossible for the Exposition property to not qualify for a reverse mortgage of some amount. Courts

7

must not construe contracts in such a way that provisions are rendered meaningless. *See Moayedi v. Interstate 35/Chisam Rd., L.P.*, 438 S.W.3d 1, 7 (Tex. 2014). If we examine and consider the entire settlement agreement in context and give effect to all its provisions, as we must, *see id.*, the phrase "a reverse mortgage" in this provision is plainly meant to reference the reverse mortgage that is contemplated and discussed throughout the settlement agreement. Thus, to the extent it is even necessary to dissect and translate it, the phrase has only one reasonable meaning: "If Garcia is unable to obtain a reverse mortgage as discussed in this agreement, . . . ."

In sum, we hold that, considering the settlement agreement as a whole in light of the circumstances present when it was entered into, the consideration paragraph at issue here has a definite legal meaning and, is thus, unambiguous. *See Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 133 (Tex. 2010) (if court can give contract clear and definite legal meaning or interpretation, then it is not ambiguous and we construe it as matter of law). More specifically, we hold that, as consideration for the agreement, the parties agreed on two alternative courses of performance that are stated generally as follows:

(1)     Baumgarten would deed his interest in the property to Garcia in return for payment of at least $328,000, up to $337,500, which she would "proceed diligently to obtain from a reverse mortgage" on the property. Garcia agreed that she would pay Baumgarten the highest amount she was able to obtain from the reverse mortgage up to $337,500, keeping any proceeds in excess of $337,500 for herself, but she was not required to obtain a reverse mortgage for less than $328,000, in which case Baumgarten was not required to deed her his interest; or

(2)     if Garcia was not able to obtain a reverse mortgage on the property in an amount as described in the agreement—i.e., at least $328,000—Garcia had to vacate the property so that the parties could sell the house and split the sale proceeds as specified in the agreement.

8

Therefore, because there are no issues of material fact as to the element of breach, Baumgarten established that he was entitled to judgment as a matter of law. *See Nixon*, 690 S.W.2d at 551.

### *Affirmative defenses*

In an alternate argument addressing the affirmative defenses she raised in response to Baumgarten's motion for summary judgment, Garcia argues that summary judgment was improper because the settlement agreement is unenforceable under the defenses of impossibility of performance and mutual mistake. *See Brownlee*, 665 S.W.2d at 112 (noting that non-movant can avoid summary judgment by raising fact issue on each element of affirmative defense). We will address each doctrine in turn.

Under the doctrine of impossibility of performance,[3] a party's performance under a contract is discharged or excused when supervening circumstances make the performance impossible or impracticable:

> Where, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged, unless the language or the circumstances indicate the contrary.

---

[3] Texas courts and legal commentators refer to this defense using various names—"impossibility of performance," "commercial impracticality," "frustration of purpose," and "supervening impracticality"—but most agree that there are no substantive differences. *See Tractebel Energy Mktg., Inc. v. E.I. DuPont De Nemours & Co.*, 118 S.W.3d 60, 64–65 & n.6 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (citing Richard A. Posner & Andrew M. Rosenfield, *Impossibility & Related Doctrines in Contract Law: An Economic Analysis*, 6 J. Legal Stud. 83, 86 (1977) (stating no functional distinction exists among doctrines of impossibility, impracticability, and frustration of purpose)).

9

Restatement (Second) of Contracts § 261 (1981); *see Centex Corp. v. Dalton*, 840 S.W.2d 952, 954 (Tex. 1992). Garcia argues that the summary-judgment evidence established that the appraised value of the Exposition property was $485,000 and that mandatory Federal Housing Authority (FHA) rules limit the reverse-mortgage loan amount to 55% of the appraised value, which means that the maximum reverse-mortgage loan amount possible on the Exposition property was $267,235. Therefore, Garcia concludes, because the settlement agreement required her to obtain a reverse mortgage of at least $328,000, she is excused from performing that promise as a matter of law because the FHA rules and appraisal value rendered performance impossible, and thus summary judgment was improper. We disagree.

Although Garcia may not have been able to get a reverse mortgage in the amount contemplated by the settlement agreement, that did not render performance under the contract impossible. As we held above, the settlement agreement created two avenues of performance. The first, which Garcia contends was impossible, required her to pay Baumgarten between $328,000 and $337,500 with proceeds obtained from a reverse mortgage on the property, but only if the reverse-mortgage loan amount was at least $328,000. The second, the possibility or impossibility of which Garcia does not address here, required Garcia to vacate the house so that it could be sold if she was unable to obtain a reverse mortgage. While the reverse mortgage was plainly Garcia's preference, the partition by sale is also undisputedly a part of the parties' agreement. Thus, even if a lower-than-anticipated appraisal combined with federal regulations made performance of the reverse-mortgage provision of the settlement agreement impossible, performance by sale remains possible. As such, the doctrine of impossibility is not applicable here. *See* Restatement (Second) of Contracts § 261 cmt. f (noting that where contract provides alternative performance, "the fact that one or more of the

10

alternatives has become impracticable will not discharge the party's duty to perform if at least one of them remains practicable"); *see also Centex*, 840 S.W.2d at 955 (implicitly acknowledging that doctrine addresses failure to anticipate contingencies); *Brownlee*, 665 S.W.2d at 112 (non-movant asserting affirmative defense in response to summary judgment must raise fact issue as to each element of affirmative defense).

Garcia raises a related argument in connection with the defense of mutual mistake. Under this doctrine, a contract is voidable by the adversely affected party "[w]here a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances." Restatement (Second) of Contracts § 152; *see Williams v. Glash*, 789 S.W.2d 261, 263 (Tex. 1990) (citing *id.*); *Wallerstein v. Spirt*, 8 S.W.3d 774, 781 (Tex. App.—Austin 1999, no pet.) (elements of mutual mistake are (1) mistake of fact, (2) held mutually by parties, (3) which materially affects agreed-upon exchange). Garcia asserts that the mutual mistake here regarded the value of the Exposition property: "[T]he parties plainly entered into their agreement with the understanding and belief that the Exposition Blvd. property had a value sufficient to support a reverse mortgage loan [that] would generate funds in the amount of at least $328,000." As proof to support this assertion, Garcia points to two provisions in the consideration paragraph:

- "Garcia agrees to pay Baumgarten the highest amount possible from loan proceeds she will obtain under a reverse mortgage on the Property, not to exceed $337,500, but in any event no less than $328,000, to purchase Baumgarten's ownership interest" in the property.

- "If Garcia obtains a reverse mortgage in excess of $337,500, anything above $337,500 may be used for her own use."

11

We agree with Garcia that the first of these two provisions establishes that Garcia must pay Baumgarten as much as $337,550, but no less than $328,000, and that those funds must come from the proceeds of a reverse mortgage on the Exposition property. But the agreement also makes it clear that Garcia is not obligated to enter in to a reverse mortgage unless it pays at least $328,000: "Garcia agrees to proceed diligently in obtaining a reverse mortgage in the amount of $337,500, but not less than $328,000, . . . ." This shows that the parties understood and, in fact, anticipated that the property might not support a $328,000 reverse mortgage. The parties would not include a minimum such as this if they were both working under the mistaken belief that the property would qualify for at least (or no less than) that amount. If anything, the parties were merely hopeful that the property would qualify for a reverse-mortgage loan of at least this amount, so they included a limit on the low end of the reverse mortgage in the event that hope was not realized.

Nevertheless, even if we were to accept Garcia's assertion that the parties shared this mistaken belief about the property's value, that mistake would not have had a material effect on the agreement given the parties' inclusion of the contingency provision. *See Wallerstein*, 8 S.W.3d at 781 (mutual mistake must materially affect the agreed-upon exchange); *de Monet v. PERA*, 877 S.W.2d 352, 359 (Tex. App.—Dallas 1994, 20 writ) "Relief is appropriate only in situations where a mistake of both parties has such a material effect on the agreed exchange of performances as to upset the very basis of the contract."). As discussed, the contingency provision provided an alternate method of performance if Garcia was unable to obtain a reverse mortgage. Thus, even if Garcia was unable to obtain a reverse mortgage due to mutual mistake, she could still perform the contract. The doctrine does not apply.

We overrule Garcia's first issue.

**Attorney fees**

Relying on the well-established rule in Texas that attorney fees are not recoverable unless authorized by statute or contract, *see Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310–11 (Tex. 2006), Garcia asserts as her fourth issue that the district court's award of $42,240 in attorney fees is not supported by legally sufficient evidence.[4] We agree. The only claim asserted by Baumgarten for which attorney fees are recoverable is his claim for breach of the parties' settlement agreement. *See* Tex. Civ. Prac. & Rem. Code § 38.001(8) (authorizing attorney fees in contract claims). The district court acknowledged this in its judgment—"Baumgarten shall recover attorney[] fees from Garcia pursuant to Tex. Civ. Prac. & Rem. Code § 38.001"—but awarded an amount that included attorney fees incurred on claims other than the contract claim, despite evidence in the record conclusively establishing the amount spent on the breach-of-contract claim.

The evidence in the record regarding Baumgarten's attorney fees consists solely of an affidavit from his attorney that was attached to the motion for summary judgment. In the affidavit, Baumgarten's attorney testified as follows:

> 6. Plaintiff has incurred $39,490.00 in attorneys' fees in connection with the [listed attorneys and paralegals]. Of these fees that have already been incurred, $6,043.13 are directly attributable to Mr. Baumgarten's breach of contract claim only.
>
> 7. Plaintiff further expect[s] to incur an additional $2,750 in attorneys' fees in drafting a reply to any response to Plaintiff's Motion for Traditional Summary

---

[4] Garcia also raises a challenge to the appellate attorney fees awarded in the judgment, complaining that Baumgarten failed to properly segregate his appellate attorney fees. But as she has since conceded, she waived any error on this issue when she failed to timely object to the fact that the appellate attorney fees were not segregated, so we may not consider it for the first time on appeal. *See* Tex. R. App. P. 33.1(a); *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 389 (Tex. 1997) ("[I]f no one objects to the fact that the attorney fees are not segregated as to specific claims, then the objection is waived.") (citing *Hruska v. First State Bank*, 747 S.W.2d 783, 785 (Tex. 1988)).

13

Judgment on Defendant's Breach of the Parties' Settlement Agreement that Defendant may file, preparing for a hearing on Plaintiff's Motion for Traditional Summary Judgment on Defendant's Breach of the Parties' Settlement Agreement, and appearing for a hearing.

Garcia did not object to or contradict the contents of the affidavit. Thus, the affidavit conclusively establishes that Baumgarten incurred $8,793.13 in attorney fees attributable to his claim for breach of the settlement agreement. *See In re Marriage of Pyrtle*, 433 S.W.3d 161 (Tex. App.—Dallas 2014, pet. denied) ("Testimony from a party's attorney about that party's attorney fees is taken as true as a matter of law if the testimony 'is not contradicted by any other witness and is clear, positive, direct, and free from contradiction.'" (quoting *In re A.B.P.*, 291 S.W.3d 91, 98 (Tex. App.—Dallas 2009, no pet.)). More to the point here, however, this evidence correlates to a complete absence of evidence supporting the $42,240 amount awarded by the district court as attorney fees for breach of contract. *See City of Keller v. Wilson*, 168 S.W.3d 802, 810–11 (Tex. 2005) (describing standard of review for legal-sufficiency challenges) (citing Robert W. Calvert, *"No Evidence" & "Insufficient Evidence" Points of Error*, 38 Tex. L. Rev. 361 (1960)); *see also Tony Gullo*, 212 S.W.3d at 310–11 (noting that Texas law does not allow the recovery of attorney fees unless authorized by statute or contract). Accordingly, we sustain Garcia's fourth issue and, given the undisputed summary-judgment evidence conclusively establishing the amount of Baumgarten's fees incurred in connection with his claim for breach of the parties' settlement agreement, we modify paragraph 7 of the judgment to award $8,793.13 in attorney fees. *See* Tex. R. App. P. 43.2(b); *American Risk Ins. Co., Inc. v. Abousway*, No. 14-13-00124-CV, 2014 WL 2767402, at *6 (Tex. App.—Houston [14th Dist.] June 17, 2014, no pet.) (mem. op.) (modifying trial court's judgment to conform to evidence); *EMC Mortg. Corp. v. Davis*, 167 S.W.3d 406, 418

14

(Tex. App.—Austin 2005, pet. denied) (amount of attorney-fees award must be supported by legally sufficiency evidence).

**Homestead**

In her fifth issue, Garcia challenges the portion of the district court's judgment ordering that the attorney fees awarded to Baumgarten be paid from Garcia's portion of the proceeds from the sale of the Exposition property. Garcia contends that this violates the Property Code's prohibition against unapproved encumbrances on homesteads and its requirement that proceeds from the sale of a homestead be safe from creditors until six months after the sale of said homestead. *See* Tex. Prop. Code § 41.001(b) (listing approved encumbrances), (c) ("proceeds of a sale of a homestead are not subject to seizure for a creditor's claim for six months after the date of sale"). We agree.

Garcia's homestead interest protects the portion of the Exposition property that she owns. *See Laster v. First Huntsville Props. Co.*, 826 S.W.2d 125, 131–32 (Tex. 1991). According to the terms of the parties' settlement agreement, Garcia owns half of the property.[5] Therefore, Garcia's homestead right covers half of the Exposition property and, after the sale, her homestead right and its protections will carry over to her one-half portion of the proceeds from the sale for six months. *See* Tex. Prop. Code § 41.001(c); *Laster*, 826 S.W.2d at 131–32. Those protections include preventing the trial court from taxing the costs and attorney fees against the sale proceeds. *See* Tex. Prop. Code § 41.001(c); *Laster*, 826 S.W.2d at 131–32 (citing *Kirkwood v. Domnan*,

---

[5] "Garcia agrees . . . to purchase Baumgarten's ownership interest in the Exposition Blvd. Property ('Baumgarten's ½ interest')."

15

16 S.W. 428, 429 (Tex. 1891) (holding that it was error for trial court to tax costs to proceeds from sale of homestead)); *In re Garza*, 153 S.W.3d 97, 102 (Tex. App.—San Antonio 2004, no pet.) (holding that award of attorney fees to be paid out of homestead-interest proceeds was impermissible encumbrance under Property Code); *Jeter v. Jeter*, 281 S.W. 598, 600 (Tex. Civ. App.—Dallas 1926, no writ) (holding that it was error for trial court to subject homestead interest to payment of attorney fees). Accordingly, we sustain Garcia's fifth issue and modify the district court's judgment by striking the sentences in paragraphs 7 and 8 that order the awarded attorney fees and appellate attorney fees, respectively, be paid from Garcia's share of the proceeds. *See* Tex. R. App. P. 43.2(b).[6]

## Conclusion

We sustain Garcia's fourth and fifth issues and modify the judgment as described above. Paragraphs 7 and 8 of the modified judgment should read as follows:

7.      Baumgarten shall recover attorneys' fees from Garcia pursuant to Tex. Civ. Prac. & Rem. Code § 38.001 in the amount of $8,793.13, which the Court finds are reasonable and necessary, plus expenses and costs of court in the amount of $5,615.04.

8.      Baumgarten shall recover from Garcia an additional $15,000 in attorneys' fees if Garcia appeals to the Court of Appeals and Baumgarten prevails, an additional $7,500 in attorneys' fees if a petition for review is filed with the Supreme Court of Texas, an additional $10,000 in attorneys' fees in preparing

---

[6] Garcia's remaining issues challenge the district court's summary judgment on her adverse-possession, fraud, fraudulent-inducement, and estoppel claims and defenses. Those are the very matters that the parties specifically resolved in their settlement agreement, the validity of which Garcia does not challenge, so she is precluded from re-raising them. *See, e.g.*, *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 179 (Tex. 1997) (holding that parties can fully and finally resolve all related, underlying disputes by agreement, including fraudulent-inducement claims based on alleged fraudulent inducement to settle).

16

briefs to be filed with the Supreme Court of Texas, and an additional $2,500 if Baumgarten prevails on appeal. The Court finds that the amount of attorneys' fees identified above for appeal are reasonable and necessary.

We affirm the summary judgment as modified.

_____

Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Goodwin and Field

Modified and, as Modified, Affirmed

Filed:   July 30, 2015